ILLINOIS CENTRAL RAILROAD COMPANY

v.

J. M. PIRTLE, ADMINISTRATOR, ETC.

*Master and Servant—Railroads—Negligence—Personal Injury to Employe—Improper Machinery and Appliances—Wheels of Tender— Fellow-Servants.*

1. It is not the law, that because the engineer had notice of the defective condition of the wheels of the tender to his engine, and he was a fellow-servant of a brakeman on a given train, that therefore the latter had notice. The doctrine of fellow-servants will apply in such case if an injury occurs through the negligence of such engineer.

2. In an action brought to recover for the death of a railroad brakeman, the same being alleged to have occurred through the use of a tender with defective wheels, this court holds, in view of the evidence, that the judgment for the plaintiff can not be disturbed.

[Opinion filed June 26, 1893.]

APPEAL from the Circuit Court of Washington County; the Hon. GEORGE W. WALL, Judge, presiding.

Messrs. CHARLES T. MOORE and GREEN & GILBERT, for appellant.

Messrs. Forman & Merrick and Watts & Watts, for appellee.

Mr. Justice Sample. On the 21st day of October, 1890, Henry T. Perry, while in the employ of appellant as front brakeman on a freight train, and while in the performance of his duty, was killed in a wreck of the train, caused by the cars leaving the rails. The deceased left a widow, on whose behalf, under the statute, this action was brought and verdict and judgment obtained in the court below.

This court is asked to reverse that judgment because, as claimed, the evidence does not sustain it.

The negligence averred is, that the flanges of the wheels of the tender were so worn, cut, imperfect and in such unsafe condition, that the wheels of said tender car ran off the track and wrecked the train, whereby Perry, while in the exercise of due care for his own safety, was killed, of which imperfect and unsafe condition of said wheels the appellant, before such accident, had notice, and the deceased did not.

There is uncontradicted proof, that twice during the month of October, before the accident, the engineer in charge had reported to the proper authorities, calling attention to the wheels of this tender, and nothing was done toward remedying the defects.

The engineer testified that the flanges of the wheels on the left hand side of the tender were wearing sharp, while those on the right hand side were in good condition. The general foreman of the shops admits that his attention was twice called during the month of October, prior to the accident, to the fact that the flanges of the tender wheels were worn. The assistant foreman admits that his attention was twice called to the tender wheels, but denies that his attention was called to the flanges of the wheels. It is also admitted that nothing was done to remedy the defect.

It is clear, under the evidence, that the flanges of the tender wheels on the left hand side of the tender were defective, or worn so that they needed repairing, or the tender needed new wheels. It is also clear that the company had notice

of such condition before the accident happened in time to have made them safe, and did not do so.

It is also clear that the deceased did not have in his charge the care of the wheels of the tender, and there is no proof that he had notice of their defective condition.

It is not the law, that because the engineer had notice, and he was a fellow-servant with the brakeman, that therefore the brakeman had notice.

The engineer was not negligent in the performance of his duty, whereby the accident happened, for he had reported these wheels to the company as being defective. He did not have to notify Perry, the deceased. Had the engineer, in the operation of the train, or of said car, been negligent, whereby the accident and injury occurred, then the doctrine of fellow-servants would have applied. No such claim is made. The evidence shows that the train was only running, at the time of the accident, at about the rate of six or seven miles an hour.

The serious question is as to whether the defective flanges of the wheels of the tender caused the cars to run off the track, which resulted in the death of Perry.

The crew in charge of the train were Charles W. Styles, engineer; A. L. Joliff, caboose brakeman; the deceased, as front brakeman; Aaron George, conductor, and Walter S. McCosh, fireman.

The fireman jumped, at the time of the accident, from the engine, and was injured. He did not testify in this case. The caboose brakeman testified that he made no examination and did not see the tender or cars off the track, and therefore knew nothing of the cause of the wreck.

The accident happened at about 2 o'clock in the morning, just after the train had left the station of Carbondale, and just before it crossed the track of what is known as the Short Line Road, at which time the deceased was on the car next to the tender. The train was going north, and the engine was stopped by the accident about eight car lengths north of Grand Tower switch, and about three car lengths north of the West Exchange switch, which switches projected from

the main track of appellant's line, on which the train was being run in a northwesterly direction.   The split switch, or Grand Tower switch, was on the west rail, and this switch was where some trucks or wheels had just left the track.   If the sharpened flanges of the tender wheels did get into this split switch, then the evidence shows that necessarily the wheels would follow it and force them off the main line of track, and that when sharpened, they are apt to do so.   To avoid this danger, the flanges are made bevel-edged next to the tread of the wheel.

The engineer testified that the wheels of some cars climbed the rail at the point of the Grand Tower switch and ran about three or four feet on it before dropping to the ground on the *west* side of the rail, and from there ran on the ties to near where the tender stopped.   Before reaching the tender, as it stood after the accident, the marks became so mixed that they could not be definitely traced.   The *left* or west wheels of the front truck of the tender were off the track on the *west* side of the rail of the main track when it stopped.

The conductor, who also made a careful examination, testified to the same appearance, substantially, as the engineer. The engineer testified that he examined the split switch where the wheels mounted the rails, and that the wheels did not go through the split switch, in his opinion, for the reason that he could see no marks there to indicate it. What caused the wheels to leave the track is to be determined from all the facts and circumstances, and in the same way is to be determined which wheels left the track first and caused the wreck, resulting in the death of appellee's intestate.

We do not believe that the wreck was caused by the spreading of the rails.   The track was spread back where the cars were dropped on the ties inside the rails, in our opinion, by the reactionary force caused from the sudden stoppage of the cars in front.   The evidence shows that the rear end of the head car and the front end of the second car came together with such force that these ends shot out to the east.

There was no evidence of the spreading of the track back where the wheels *first* got off the track, back at the Grand Tower switch. The first appearance of the spreading of the main track, was, according to the evidence of the conductor, ten feet north of that point, and according to the evidence of the engineer, who we consider made a more careful examination, it was still further away.

That the primary cause of the wreck was the mounting of the west rail of the main track by the wheels of some car back at Grand Tower split switch, we think, is entirely clear. The spreading of the track did not cause the wheels to so mount the west rail and drop on the ties on the west side of it. Had the track been spread there, the wheels of the cars would have dropped inside the rails. They could not have climbed the west rail.

This leaves the cause of the accident to be attributed solely to the wheels of some car getting on the west side of the main rail back at the switch. The cause is to be found, in our judgment, either in a defective switch or defective wheels.

There is no proof of a defective switch. There is proof of defective wheels. Those wheels were the west or left wheels of the tender, which the engineer had twice reported before the accident. The left or west wheels of the tender when it stopped, were found on the *west* side of the main rail of the track and no other wheels were found on that side.

We think, from all the facts and circumstances, that the inference is so strong that the defective wheels of the tender first got off the track and caused this wreck, that such fact may be considered as fairly established by the preponderance of the evidence.

The only question then left is, did the imperfect and defective condition of the wheels of the tender cause them to leave the track at the switch. The evidence is clear that a sharpened flange is apt to leave the main rail at a split switch. These wheels did leave the track at such place.

What, then, is the fair inference, notwithstanding the en-

gineer's statement that the flange did not run through the split switch ?

There was some cause for the wheels of the tender to mount the west rail at that particular point. The jury, and the court below, we think, were justified in believing that cause was the defective flange of the wheels of the tender, of which defect the appellant had notice before the accident. The point made by appellee, that the bill of exceptions was defective in not showing that it contained all the evidence, was avoided by amendment.

The judgment is affirmed.

*Judgment affirmed.*