Hillsborough, }
June 3, 1902. }

OLNEY *v.* BOSTON & MAINE RAILROAD.

A master is liable for the negligence of an agent to whom he has entrusted the duty of providing safe and suitable machinery for the use of his servants.

Whether the defendant's negligence was the remote or proximate cause of the plaintiff's injury, is a question of fact; but whether the evidence is sufficient to authorize a finding that the negligence complained of was the legal cause of the injury, is a question of law.

A servant's continuance in an employment, with knowledge of defects in the machinery furnished for his use, is generally conclusive evidence of his assumption of the risk of dangers arising therefrom; but when he has no opportunity to quit the service after discovery of the defect and before an injury is received, there is no ground for the implication of such a contract.

An engineer who relies upon the promise of the master's agent to remedy a defect in a locomotive, and who, in the line of his duty, attempts to make urgent and necessary repairs upon the machine while it is in motion, is not thereby chargeable with contributory negligence as a matter of law.

CASE, for negligence.   Transferred from the January term, 1900, of the supreme court by *Pike*, J.

The plaintiff, an engineer of experience, was employed by the defendants in running a freight train from Woodsville.   At the time of his injury the engine upon which he was then riding had been used by him daily, Sundays excepted, for about ten months. On the side of the engine, at the forward end and below the base of the smoke-stack, was an arm-hole over which was a cover.   A little below the arm-hole and further ahead was a signal lantern like those in general use upon locomotives, which for a long time had been used by the plaintiff and his fireman as a means of support when passing to a point farther along on the engine.   On the right side of the cab a door opened outward upon a running-board or walk, intended for use when the engine was in motion or at rest, which extended along the side of the boiler toward the arm-hole.   Above the running-board, and intended as a means of support for persons walking thereon, was a hand-rail which extended toward the front of the engine to a point just beyond the steam-chest, but did not reach as far forward as the arm-hole by about twelve inches.

The plaintiff was injured on Monday, November 30, 1896. About seven or eight months prior to that date, while upon his run, he discovered that the arm-hole cover had become so worn as to be out of order, and in consequence of the lack of repair had worked loose.   He went out of the cab door along the running-board, and tightened the cover by pressing it in with one hand and pulling the handle with the other, so that the lips on the cover gripped wedge-shaped ridges designed for this purpose.   On Thursday before the accident, while the engine was in motion, the cover again became loose, and the plaintiff tightened it as before. Upon reaching Woodsville that afternoon he informed the foreman of the repair shop of its condition; and the latter said he would have it fixed that afternoon, but failed to do so.   The next day the plaintiff saw that the repairs had not been made; and on the following day the cover again became loose while on the road, and the plaintiff tightened it in the manner above described.   Upon his return to Woodsville that afternoon he again told the foreman of the defendants' repair shop that the cover was defective, and said it was not fit to make another trip with.   The foreman said it should be repaired before the plaintiff's trip on Monday.

According to the regulations of the road, it was the duty of all engineers to inspect their engines before starting upon any trip, to see that they were "in proper condition for the service required, and if not, to put them in proper condition, or know that they are so, before using them."   The plaintiff customarily made this

inspection the evening before starting, after the engine was housed; and as a part of his duty he so made it in this instance. The plaintiff relied upon the promise of the foreman that he would repair the arm-hole cover, and did not examine it after Saturday to ascertain whether he had done so.

Monday morning, while running out of the Woodsville yard at a speed of four or five miles an hour, the plaintiff discovered that the cover had not been repaired, and in consequence was again loose. Thinking that it would fall if not tightened, he went out through the cab door and along the running-board, grasping the hand-rail with his left hand until he reached the end of the rail, when he stepped down upon the top of the steam-chest, and then, releasing his hold upon the rail, reached for the cover to take hold of it with both hands — the use of both hands being necessary in securing it in place. The plaintiff did not succeed in grasping the cover handle, for just as he touched the cover it fell out. "Naturally," "involuntarily," "instinctively and without time to think about it," as he testified, he grabbed for the cover as it fell. In doing so he lost his balance, and in falling caught the top of the signal lamp, which in consequence was torn apart and failed to prevent his fall to the ground, where he was injured.

The plaintiff testified that when the cover was loose the arm-hole emitted smoke and sparks, endangering property and affecting the draft so that the engine would not steam properly; that there was also great danger to life and property from the liability of the cover to drop off and cause a wreck by getting under the trucks or into the cross-head; that these dangers could be averted in less time by the method he adopted than by stopping the engine; that his method was a proper one under the circumstances; and that he did not suppose the lantern was stronger or different in any particular from other signal lamps in use. There was no evidence tending to show that it was different in any particular.

At the close of the plaintiff's evidence, and subject to his exception, a verdict was directed for the defendants.

*Burnham, Brown & Warren*, for the plaintiff.

*Oliver E. Branch* and *William H. Sawyer*, for the defendants.

PARSONS, J. The claim that the case does not disclose evidence tending to show a want of due care on the part of the defendants, in the performance of their master's duty to provide a reasonably safe machine for the use of their employee, is not sustained by the record. The evidence was directly to the fact that the loose hand-hole cover rendered the engine unsafe, and that the

defendants, in the person of the individual vested with the duty of repair, had been notified of the defect and had promised to make the needed repair. It cannot be said that these facts do not furnish evidence from which the failure to make such repair might be found to constitute negligence. For the negligence of the agent to whom the defendants had entrusted their master's duty of providing safe and suitable machinery, the defendants are liable. *Jaques* v. *Company*, 66 N. H. 482.

The defendants contend that their negligence was not the proximate cause of the injury. "In this state it is well settled that the question of remote and proximate cause is a question of fact to be determined by the jury." *Ela* v. *Cable Co.*, *ante*, pp. 1, 3. The question of law is whether there is evidence upon which the finding that the defendants' negligence was the legal cause of the injury can properly be made. *McGill* v. *Granite Co.*, 70 N. H. 125, 129. The plaintiff's evidence was, that upon observing that the cover was loose he shut off steam and at once went forward upon the engine, as it was his duty to do, for the purpose of putting it into place; that he stepped down on to the steam-chest; that as he reached for the handle of the cover, and just as he touched it, it suddenly fell, causing him instinctively and involuntarily to reach for it, whereby he lost his balance and was injured; and that there was no sudden lurch of the engine, which at the time was moving at a speed of four or five miles an hour. The case distinctly states that the looseness of the cover discovered by the plaintiff was "in consequence of the lack of repair." Upon this evidence it would not be unreasonable to infer that it fell because of the lack of repair. That such a cover might fall if not securely fastened, is not only reasonable but probable; and that its fall might produce an accident to the train and injury to the trainmen, is also a reasonable conclusion upon the evidence. The causal connection between the defendants' negligent failure to repair and an injury received by the plaintiff in such an accident, occurring either without discovery of its condition or after discovery before the train could be stopped, would be too plain for argument. Also, if the plaintiff had been going forward upon the engine to adjust the headlight, in innocent ignorance of any defect in the fastening of the cover, and, while passing upon the steam-chest, was caused to lose his balance and fall by the sudden dropping of the cover, it would seem plain that the fall of the cover was the proximate cause of the injury; and that if such a fall were due to the defendants' negligent repair of the cover, the causal connection between the defendants' negligence and the plaintiff's injury would be in no degree remote. The fact that the engineer observed the looseness of the cover, went forward to adjust it,

and was preparing to do so when it fell, does not destroy the connection between the defendants' negligence and the injury, but raises the question whether an intervening responsibility of the plaintiff, not present in the case suggested because of his supposed ignorance without fault, has relieved the defendants from liability. It is claimed that the proximate cause of the plaintiff's injury was his loss of balance. This doubtless was the last physical manifestation in the chain of causation which permitted the force of gravitation to drag him to the ground; but the last apparent cause is not necessarily the proximate cause of the injury. There may have been a cause for the loss of balance which legally and logically was the proximate cause of the injury. The question is, whether there was evidence from which a jury might properly find that there was such ultimate proximate cause for which the defendants were legally responsible.

As has been suggested, the testimony tended to prove that the plaintiff was at the place where he lost his balance in consequence of the defendants' negligence in putting the locomotive in suitable repair. The jury might reasonably find that the loose cover was liable to fall just as it was touched by the plaintiff; that the plaintiff's attempt to recover it was natural and to be expected under the circumstances. There was no testimony whatever tending to show that the loss of balance was due to an independent intervening cause, while there was direct testimony from the plaintiff that the same was not due to a sudden lurch of the engine, as claimed in argument, if that fact be material. As there was evidence that the plaintiff's injury was caused by the defendants' breach of duty, the plaintiff had the right to have this evidence weighed by the jury unless it conclusively appeared from the evidence in the case, either that the injury arose from an assumed risk, or that the plaintiff's fault was a part of its cause.

Assumption of risk is purely a matter of contract. While there are rarely any stipulations expressed in the contract of hiring, by remaining in the service the servant assumes the risk of injury from defects in the machinery furnished him, of which he knows or which reasonable care would disclose to him. Continuance in service with knowledge of the risk is generally conclusive evidence of the servant's agreement to assume it. *Collins* v. *Car Co.*, 68 N. H. 196. When, after discovery of the defect, the servant has no opportunity to leave the service before the injury is received, there is no ground for the legal implication of such contract. *Casey* v. *Railway*, 68 N. H. 162; *Dempsey* v. *Sawyer*, 95 Me. 295. The voluntary assent of the servant is essential to the contract. *Fitzgerald* v. *Paper Co.*, 155 Mass. 155, 159; Bail. Mast. & Ser. 170; 49 L. R. A. 49, note. As the unrepaired plate

was not discovered until the danger arising from driving the engine in that condition existed, if the plaintiff's ignorance of the lack of repair was not due to his own fault the risk of injury resulting directly therefrom, or from a proper effort to remove or escape from the danger, was no part of the plaintiff's contract of employment.

If the plaintiff had been employed to make the repair when he had in safety an option to do so or not, his contract to do so would have included the assumption of all the risks which he knew or ought to have known, and the fact of his previous knowledge of the looseness of the plate would be a bar to a recovery for its fall; but as his contract was to run a suitable engine, he did not contract to bear the risk of injury which might come to him from the unknown defect if injury resulted before he discovered it, or after discovery thereof before by reasonable care he could prevent injury to himself. After the defect became patent the plaintiff was bound to exercise reasonable care to avoid injury. If he did not, his want of care would be contributory negligence barring a recovery.

Assuming that he was not in fault for not knowing before he started that the plate had not been repaired,— a proposition hereafter considered,— upon his subsequent discovery his rights are dependent upon the presence or absence of fault upon his part as constituting contributory negligence. The plaintiff's evidence was, that the loosened plate presented a situation of danger; that if he remained in the cab until a stop could be made, injury was probable to himself and the other trainmen and the defendants' property; that to go forward upon the engine was not unusual, but was in fact part of an engineer's duty; that he had himself put the plate in position upon other occasions. Doubtless he could have secured his personal safety with little risk by abandoning his post of duty and leaving the lives and property entrusted to his care without protection. It was his duty to his employers and his fellow-trainmen to endeavor to prevent an accident. His attempt to do his duty is not as matter of law negligence. *Belleville Stone Co.* v. *Mooney*, 61 N. J. Law 253.

Whether the course he adopted was that dictated by reasonable care, is matter of fact upon which on the evidence fair-minded men might come to different conclusions. Being compelled to choose in a situation of danger between different courses of action, the fact that what he did resulted in injury, while by an opposite course he could have escaped harm, does not conclusively establish his fault. *Folsom* v. *Railroad*, 68 N. H. 454. As there was evidence tending to show that it was the plaintiff's duty — the performance of which was necessary to prevent serious harm — to

tighten the plate when it became loose, and that the proper method of performing this duty was to go forward upon the engine for that purpose without waiting for a stop, his attempt to perform this duty in a proper and necessary manner is not conclusive evidence of negligence. His actual knowledge that the plate was loose and might fall at any moment is evidence upon the care it was his duty to exercise to avoid injury by its fall. The peril to himself and others if he did not succeed in tightening it before it fell is also evidence upon the care which the prudence demanded by the situation required of him. A jury may think that the danger to the train from the fall of the plate was so slight that the fact that he attempted to tighten it instead of stopping the train, or the fact that its sudden fall caused him to lose his balance, establishes his want of care. Such may be the fact; but upon the evidence a different conclusion would not be unreasonable.

It is further urged that the plaintiff was in fault for not ascertaining by inspection immediately before starting that the promised repair had not been made. It was the plaintiff's duty under the rules to inspect the locomotive; but he is not, as a matter of law, at fault for performing such duty at the close of the previous day's work instead of immediately before starting out. One object of the inspection duty resting on the plaintiff was to discover defects arising in use. Inspection at the close of a trip would give an opportunity for minor repairs before the next trip. This would be a reason why the time chosen might be found appropriate. The rule relied upon by the defendants must be given a reasonable construction and application. It cannot be construed to render the defendants' employees insurers of the "proper condition" of all appliances used by them, or to relieve the defendants of liability for the breach of their masters' duty. So far as material to the present question, it may properly be assumed that Olney's inspection of the engine disclosed that it was in proper condition in all respects except the arm-hole cover, and that between the time of his inspection and his next use of the engine no new defect arose; for there is no suggestion of any defect as a cause of the injury, discoverable Monday morning, which was not equally discoverable Saturday evening. The evidence tended to show that Olney inspected the engine as required by the rule, and discovered that it was not "in proper condition for the service required." It was not his duty to make the necessary repair. He reported the defect to the proper person representing the defendants. "As the employee had given notice of the defect to the proper officer whose duty it was to make the repairs, and the impression had been conveyed to him that these

would be made, he had the right to assume that they had been made, and to act upon that assumption." *Northern etc. R. R.* v. *Babcock*, 154 U. S. 190, 200, 201. Here the evidence tends to establish, not an "impression" in the plaintiff that the repairs would be made, but an express promise by the defendants that they should be. In the face of the duty of the employers to make repair and their express promise to do so, it cannot be said as a matter of law that Olney, when he started, did not have reasonable grounds for belief that he knew his engine was in proper condition for use. The express assertion of the employer to Olney, just before starting, that the repair had been made, would be evidence of greater weight, but of the same character as the promise upon which Olney's knowledge or belief of the condition of his engine was based. There was evidence that the inspection was made, and that Olney knew or believed with reason that the engine was in proper condition. Olney's contract of employment, as evidenced by the defendants' rule, did not necessarily require him to reinspect the engine to ascertain the performance of the duty devolving upon the employer by law and express contract. A failure to strictly comply with the rule would not necessarily bar the plaintiff's action, but such failure would be evidence on the question of the plaintiff's care. *Deverson* v. *Railroad*, 58 N. H. 129, 132. Whether due care, which the plaintiff was required to exercise for his own safety, demanded that he should examine the engine in the morning to ascertain whether the repairs had been made, is a question of fact. Upon this question the promise to make the repair before the next trip is evidence. Whether the obligation to exercise care was or was not satisfied by entire reliance upon the foreman's promise, would depend upon all the facts in evidence, and is for the jury. *Burnham* v. *Railroad*, 69 N. H. 280 ; *Keevan* v. *Walker*, 172 Mass. 56.

The cases *Shulz* v. *Rohe*, 149 N. Y. 132, and *Illinois Steel Co.* v. *Mann*, 170 Ill. 200, relied upon by the defendants, are not in point. In the first case there was no promise to repair. A direction to make repair was given by the foreman to another servant in the plaintiff's hearing. Liability was denied upon the ground that the plaintiff resumed the use of the machine without direction from his employers, and that the failure to make repair was the negligence of a fellow-servant; while the second case is that of a servant continuing to work with knowledge that the repair had not been made, because the defect was obvious. "That the servant, when he is called upon to work with an appliance which he has ceased to handle since the master promised to repair it, may or may not be justified, according to the circumstances, in acting upon the presumption that the repairs have been completed, is

clear both upon principle and authority." Note to *Illinois Steel Co.* v. *Mann*, 40 L. R. A. 799. In this case the evidence of previous failure of the foreman to make repair as promised tends to prove that a prudent man would not have relied upon the promise in this instance. Such evidence does not, however, give this court power to pass upon the question.

The case should have been submitted to the jury. Whether upon other points in the evidence aside from those discussed a case is or is not made for the jury, is not considered.

*Exception sustained : verdict set aside.*

WALKER, J., did not sit: the others concurred.