Carroll,
March 3, 1936.

### IRVING GLIDDEN

*v.*

### PUBLIC SERVICE CO. OF NEW HAMPSHIRE.

### WALTER GLIDDEN *v.* SAME.

6

*Cooper & Hall (Mr. Hall orally), for the plaintiffs.*

*Demond, Woodworth, Sulloway, Piper & Jones (Mr. Piper orally), for the defendant.*

PAGE, J.   The defendant's sole claim, in connection with its exceptions to the denial of its motions for nonsuits and directed verdicts, is that the plaintiffs assumed the risk.   Under the view of the evidence most favorable to the plaintiffs, the risk which resulted in the injuries of both plaintiffs was the defect in pole 3.   The question for us, therefore, is whether it must be found that the plaintiffs appreciated, or ought to have appreciated, the danger of pole 3 falling. *Goodale* v. *York*, 74 N. H. 454, 455.

The knowledge and negligence of the defendant are not matters with which we now have to deal.   The only question is whether because of their own knowledge, conclusively appearing, the plaintiffs must be taken to have assumed the risk, thus leaving the defendant owing them no duty whatsoever with respect to the cause of their injuries.   What must be found as to their actual knowledge and the knowledge they ought to have possessed?   The answer to the first branch of the question is easy; there is no evidence that either plaintiff in fact knew that pole 3 was likely to break under the strain to which it was subjected.

As to what either of them should under the circumstances have appreciated, the question is not so simple.   No reason appears why Walter's constructive knowledge, if he had any, should be imputed to Irving.   Irving must be charged only with such appreciation as ought to have come to him from his own experience and past observation, and what he saw and heard, and ought to have seen and heard, that night.   And the same holds true for Walter.

Though it seems that pole 2 was sufficiently sound so that Irving

may be said to have assumed no risk when he climbed it, yet when he later knew that Walter was about to climb pole 3, and still later while Walter was climbing it, Irving would be chargeable with such knowledge as he (Irving) reasonably ought to have had of the risk attendant upon the added factor of strain introduced.  So he could not voluntarily stay on pole 2 provided he could extricate himself or bring about a cessation of the risk of Walter's climbing pole 3 after it should have become apparent to him that there was a risk of number 3 falling and pulling number 2 with it.  *Olney* v. *Railroad*, 71 N. H. 427.  The same principle would apply to Walter if he ought reasonably to have anticipated the risk in season to have avoided it.

Should either have appreciated it before it was too late?  There was evidence of the general knowledge and experience of both, of their knowledge of the unusual strain put upon the pole-line by the fallen tree, of their knowledge that the poles were old (they had been set for about fourteen years), of Irving's knowledge that he had recently climbed pole 3 without trouble, of the knowledge of both that pole 3 carried a transformer, of Walter's "sounding" of the pole (not clearly known to Irving) as he climbed on this occasion, of the apparent sturdiness and steadiness of the pole (as both saw it, and Walter felt it) until he reached the top, of the facts that it was dark at the time and that the upper part of pole 3 was illuminated by automobile lights.  It seems clearly a question for the jury whether either plaintiff should have appreciated the risk.

The first attitude of the defendant seems to have been that the plaintiffs ought to have tested the pole, and that if they had they would have known the risk.  That attitude becomes untenable in view of the possibility of a finding that the test by probing below ground would not have disclosed the fact that the pole was unsound.

But the defendant next attempts to place the plaintiffs in a dilemma.  The defect, it urges, (1) was or (2) was not discoverable upon inspection.  If so discoverable, the plaintiffs assumed the risk. If not so discoverable, fault of the defendant is not shown.  The only "inspection" described by the defendant as applicable is the test by probing below ground.  Admittedly, that probably would not have disclosed the weakness of pole 3.  But what about the "hundred ways" of testing not described?  Obviously a probing above ground might have disclosed the difficulty.  The method on which, as far as appears, the defendant relied for testing might be found by the jury to be insufficient.  There is no evidence at all that the plaintiffs knew of any other method, or were instructed in it.  The jury

might have found that they were not bound to think of any other, and that the defendant was. Moreover, the evidence did not require a finding that either plaintiff was charged with the duty of inspection generally or with making any sort of a test before climbing a pole. *Olney* v. *Railroad*, 71 N. H. 427, 433.

The bases for the proposed dilemma do not conclusively appear. Duty of inspection could be found to rest upon the defendant and need not be found to rest upon the plaintiffs. "If so discoverable [by inspection], the plaintiffs assumed the risk." Granted, but only if the plaintiffs had laid on them as part of their employment the duty of inspection, or, lacking such duty, if they reasonably ought under the circumstances to have undertaken a test. And, again, while such inspection as the defendant practised might indeed be found inadequate for this occasion, the jury were not bound to conclude that the defendant had performed its master's duty in providing reasonably safe places for the use of the plaintiffs while in its service. It was for the jury to say whether either plaintiff fully appreciated the danger and assumed the risk. *English* v. *Amidon*, 72 N. H. 301, 303.

The defendant excepted to "the charge on the assumption of risk in that it is not clearly set forth that if the plaintiff assumes the risk he cannot recover, the burden of proof being upon the plaintiff to show non-assumption of risk." The first part of the exception seems to have been abandoned, and objection now seems to be centered on the omission to give a charge as to the burden of proof upon this specific issue. No such instruction was requested prior to the charge. The peculiar form of the exception can hardly be regarded as a request for further instructions. It is at most an exception to an asserted omission so to charge.

The jury were not told that the burden of proof was upon the plaintiffs as to that issue separately. They were, however, told at the outset that the plaintiff had the burden of convincing the jury "that his contentions upon the issues on which the liability or nonliability of the defendant turn are more probably true than other wise." The issues, as the court reminded the jury more than once, were the negligence of the defendant, contributory negligence and assumption of risk. No suggestion was made by the presiding justice that the general instructions upon burden of proof were inapplicable to any issue except that of contributory negligence. It is not probable that the jury understood that the burden of proof as to assumption rested anywhere except on the plaintiffs. The exception is overruled.

The refusal to charge that there was no evidence that the defendant failed in any duty to instruct them as to their work and the dangers thereof was not error. The only issue submitted to the jury was whether the defendant had failed in a duty of inspection and repair.

The requests for instructions to the effect that there was no emergency created by the defendant such as would excuse the plaintiffs from using ordinary care to discover the dangers which existed or were involved in the work were immaterial to the issues submitted, namely, the lack of inspection or repair by the defendant. No part of the instructions given could be understood as suggesting that the plaintiffs were relieved of care by reason of any emergency of the sort suggested in the requests. Instead it was stated that the servant is "chargeable with knowledge of such conditions of repair or need of repair that he actually knows of" or "which by the reasonable exercise of care for his own safety he would learn of." This was sufficiently favorable to the defendant.

The refusal to charge that the fact that the plaintiff was acting under instructions from Martin Yeaton did not relieve him from the duty to exercise ordinary care to ascertain any dangers existing in the situation was not error. The argument that it was error runs thus: there was nothing in the instructions given to excuse the climbing of the poles without testing them. That assumes as a fact something that the jury were not compelled to find—that the defendants had general instructions to test poles before climbing. The court was correct in saying: "But he has some measure of right to rely, unless the duty of inspection is placed upon him, that the master has performed the duty of inspection and repair."

The other exceptions are understood to have been waived.

*Judgments on the verdicts.*

All concurred.