[Civ. No. 21492.   Second Dist., Div. Two.   June 27, 1956.]

FRANK J. SLOVICK, Respondent, v. JAMES I. BARNES
CONSTRUCTION COMPANY (a Copartnership) et al.,
Appellants.

Lyndol L. Young for Appellants.

Victor C. Rose, Alfred M. Klein and Robert P. Dockeray for Respondent.

ASHBURN, J.—Appellant James I. Barnes Construction Company was general contractor for the construction of a cargo transit berth or shed on Pier A at Long Beach Harbor. Certain steel work was sublet to Bethlehem Steel Company, which in turn sublet to Rutherford and Scoubye the installa-

tion of reinforcing steel rods. Plaintiff was an iron worker employed by the last named concern and was engaged in their work at the time of the accident which gives rise to this action for personal injuries against the general contractor. Plaintiff recovered a verdict of $17,000, the trial judge denied a motion for new trial, and hence this appeal.

The accident occurred in the area which was to become office headquarters. That portion of the structure had progressed to the point where the steel work of the second floor, called the mezzanine, was in place and the floor had been laid. The roof was not yet constructed, though the girders which would form its lower or horizontal plane were in place. Those girders, or I beams, were laid in a grill pattern, being 5 feet 7 inches apart in one direction, and 10 feet 8 inches in the other. Rutherford and Scoubye's men were engaged in installing the steel in the walls and were working on the mezzanine level. They needed planks to place on top of some sawhorses or jacks which were then on that level. On the roof girders were planks which had been delivered there by Barnes' men for use by the subcontractor. Plaintiff's foreman told him the crew needed some planks, pointing to those on the roof girders, and said to go up there and pass some down to the other men. He climbed up a steel column to the roof level. There a catwark had been laid across the I beams, obviously for use by the workmen. It consisted of planks laid end to end, with the end of each overlapping the end of the next one. It was but one plank in width, and had no railing. According to prevailing and customary practice the overlapping of the ends should have been at least six inches and of course the overlap should have coincided with the top of an I beam. Plaintiff's task required him to lift a plank, carry it along the catwalk to a place where he could lower it between girders to the floor below. To do this he had to walk sideways for four or five steps, carrying the plank. After he had lowered two of them and when in the process of carrying another, he reached a place on the catwalk which was between two of the beams or girders, had one foot on one plank and the other upon the adjoining plank, when suddenly they tipped up, he fell to the floor below; those two planks and the one he was carrying went down with him. He received serious injuries. ▮ This catwalk had been laid by defendant, the general contractor, pursuant to contract obligation and in accordance with the custom and expectation of the particular trade. It was fur-

nished for the use of the subcontractors and their men who were obviously defendant's invitees when using the same. Appellant's opening brief says that "the alleged catwalk did not conform in any respect to the requirements established by practice and custom."

Appellant argues insufficiency of the evidence to support a finding of negligence on its part. In pursuit of this end counsel contents himself with quoting selected passages of the transcript which are deemed favorable to his contentions. No effort is made to summarize or otherwise present the totality of evidence on the subject. For instance, counsel quotes at length the deposition of plaintiff but ignores his testimony at the trial except certain portions of his cross-examination. Likewise, the discussion of the testimony of Herman Davidson and Ernest Weinhart, fellow employees of plaintiff, consists of selected quotations from the cross-examination of each.

The obligation of an appellant who claims insufficiency of the evidence is thus stated in *Owens* v. *White Memorial Hospital*, 138 Cal.App.2d 634, 638 [292 P.2d 288] : "Where the appellant urges the contention of insufficiency of the evidence to sustain the findings of the jury, the rule is, 'Such contention requires defendants to demonstrate that there is no substantial evidence to support the challenged findings.' (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].)"

█ *Tesseyman* v. *Fisher*, 113 Cal.App.2d 404, 407 [248 P.2d 471] : "It is well established that a reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact. It is not the province of a reviewing court to search the record in order to ascertain whether it contains evidence that will sustain a contention made by either party to the appeal. [Citing cases.] █ Where an appellant claims that some particular issue of fact is not sustained by the evidence, he is required to set forth in his brief all of the material evidence on the point and not merely his own evidence. If this is not done, the error assigned is deemed waived." (See also *Kruckow* v. *Lesser*, 111 Cal. App.2d 198, 200 [244 P.2d 19].) There has been no genuine effort to comply with the requisite practice in this instance and the court is not required to make an independent inquiry as to the contents of the rest of the reporter's transcript, which consists of 903 pages.

Respondent's brief sets forth evidence which is sufficient to sustain the finding of negligence on defendant's part.

Further than that this court need not go. Upon the record thus presented we find support for the implied finding that defendant was guilty of negligence which was the proximate cause of the accident.

Appellant argues that, assuming it to have constructed the catwalk in the first instance, the evidence shows that changes had been made in it before the day of the accident by persons not in its employ. The argument is built upon Davidson's testimony. He testified that about two days before the accident he was on the roof girders and that he moved two planks because they were not lapped on an I beam and he almost fell; that he fixed it by pushing and pulling the planks into place so they lapped properly on the I beam. But this was at a place 40 or 50 feet away from the "exact spot of the accident." At about that same time, two or three days before the accident, Ernest Weinhart, another fellow employee, observed that in the vicinity where plaintiff later fell there were several different places where the boards were not overlapping properly; that the end of the plank was not upon the I beam in such places. This catwalk had been laid by defendant about a week before the accident, perhaps only two or three days before that event. Defendant did not undertake to prove that it had been carefully and adequately built, though the evidence was in its keeping. Counsel for appellant apparently contented himself in the trial court, as here, with the contention that plaintiff was not on any catwalk at the time of the accident. ██ It was not incumbent upon plaintiff, in order to raise the inference of negligence, to exclude every possible cause of the accident other than defendant's original faulty construction. (*Zentz* v. *Coca Cola Bottling Co.*, 39 Cal.2d 436, 444, 447 [247 P.2d 344]; *Van Horn* v. *Pacific Refining etc. Co.*, 27 Cal.App. 105, 108-109 [148 P. 951]; *Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 767 [185 P.2d 94]; *Price* v. *McDonald*, 7 Cal.App.2d 77, 81 [45 P.2d 425]; Prosser on Res Ipsa Loquitur, 37 Cal.L.Rev. 198.) In *Escola* v. *Coca Cola Bottling Co.*, 24 Cal.2d 453, 458 [150 P.2d 436] (an exploding bottle case), it is said: "It is not necessary, of course, that plaintiff eliminate every remote possibility of injury to the bottle after defendant lost control, and the requirement is satisfied if there is evidence permitting a reasonable inference that it was not accessible to extraneous harmful forces and that it was carefully handled by plaintiff or any third person who may have moved or touched it. (*Cf.* Prosser, *supra,* p. 300.) If such

624

evidence is presented, the question becomes one for the trier of fact (see e.g., *MacPherson v. Canada Dry Ginger Ale, Inc.*, 129 N.J.L. 365 [29 A.2d 868, 869]), and, accordingly, the issue should be submitted to the jury under proper instructions."[1]

It affirmatively appeared that at two places, some 40 to 50 feet apart, this runway was in an unsafe condition of such nature as to suggest faulty original construction. The catwalk was so located as to be inaccessible to anyone whose business did not require his presence there (plaintiff had to climb a steel column to get to the catwalk),[2] and such persons would have no incentive other than that of seeing that it was safe. The condition of such a structure is a fact which is of a continuous nature, certainly so for a period of a week or less in a building that is far from completion. ■ It was unsafe on the day of the accident and on the second or third day before that event, and it is reasonably inferable that such was the case when it was built one week (or less) before the catastrophe.

True, it is commonly held that a presumption of continuity of a given condition does not run backward (18 Cal. Jur.2d § 85, p. 514.) Professor Wigmore says, in the footnote on page 413 of 2 Wigmore on Evidence, Third Edition: "This fallacy that 'presumptions do not run backward' occurs again in *Krantz v. Krantz* (1933), 211 Wis. 249 [248 N.W. 155]. It would be interesting to trace out the origin of that fallacy." In the text of section 437 on pages 413-414 he says: "Similar considerations affect the use of *subsequent existence* as evidence of existence at the time in issue. Here the disturbing contingency is that some circumstance operating in the interval may have been the source of the subsequent existence, and the propriety of the inference will depend on the likelihood of such intervening circumstances having occurred and been the true origin. On landing at New York it can hardly be inferred that the steamer at the next dock has been there for a week; but it may usually be inferred that the dock has been there for some years; while the par-

---

[1]These are res ipsa loquitur cases, but they are apposite to the present discussion for the res ipsa rule, when properly applied, merely gives rise to a compulsory inference (*Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 688-691 [268 P.2d 1041]), and the present discussion relates to a permissible one.

[2]Appellant argues that there "was no evidence of any kind that said alleged catwalk was used by anybody other than Davidson prior to the date of plaintiff's accident."

ticular circumstances of appearance and the like will in the latter instance affect the length of time to which the inference could be carried back. Here, as with prior indications, the *interval of time* to which any inference will be allowable must depend upon the nature of the thing and the circumstances of the particular case.

"The opponent, on the principle of *Explanation (ante,* § 34), may always attempt to explain away the effect of the evidence by showing that in the meantime other circumstances have occurred to raise a probability of change instead of continuance.

"This general principle that a *prior* or *subsequent* existence is evidential of a later or earlier one has been repeatedly laid down, and has even been spoken of as a Presumption *(post,* § 2530)."

Volume 31, Corpus Juris Secundum, section 140, page 790: "Accordingly, in some circumstances, an inference as to the past existence of a condition or state of facts may be proper, as, for example, where the present condition or state of facts is one that would not ordinarily exist unless it had also existed at the time as to which the presumption is invoked. An inference that a state of affairs existed at a certain time may be reinforced by evidence that it continued to exist at a subsequent time." In effect such was the ruling in *Swarzwald* v. *Cooley,* 39 Cal.App.2d 306, 316 [103 P.2d 580], and *Crinella* v. *Northwestern Pac. R. R. Co.,* 85 Cal.App. 440, 448 [259 P. 774]. See also *Brock* v. *Gulf, Mobile & Ohio R. Co.,* —— Mo. —— [270 S.W.2d 827, 831]; *Bolomey* v. *Houchins,* (Mo.App.) 227 S.W.2d 752, 757-758; *Rombo* v. *Nixon,* (Tex. Civ.App.) 241 S.W.2d 983, 985; *F. W. Woolworth Co.* v. *Seckinger,* (5 C.C.A.) 125 F.2d 97, 98; *Plumer* v. *Luce,* 310 Mass. 789 [39 N.E.2d 961, 967]; *Goff* v. *Craft's Inc.,* 67 R.I. 11 [20 A.2d 520, 522]; *Harrison* v. *St. Louis-San Francisco Ry. Co.,* 339 Mo. 821 [99 S.W.2d 841, 843]. Actually it is an inference rather than a presumption with which we deal, and it having been proved (though appellant's counsel denies it) that defendant laid the catwalk, the circumstances above mentioned warrant an inference that the original construction, not more than one week before the accident, was faulty and negligent.

The general contractor, under the circumstances at bar, had not only the duty to furnish a safe place to work or a safe appliance (*Revels* v. *Southern Calif. Edison Co.,* 113 Cal.App.2d 673, 678-679 [248 P.2d 986]; *Raich* v. *Aldon*

*Const. Co.*, 129 Cal.App.2d 278, 284-285 [276 P.2d 822]; *Martin* v. *Food Machinery Corp.*, 100 Cal.App.2d 244, 248-251 [223 P.2d 293]; *Miller* v. *Pacific Constructors, Inc.*, 68 Cal.App.2d 529, 545 [157 P.2d 57]; *McCall* v. *Pacific Mail S.S. Co.*, 123 Cal. 42, 43-46 [55 P. 706]), but also to make reasonable inspections to see that same remained safe (*Devens* v. *Goldberg*, 33 Cal.2d 173, 178-179 [199 P.2d 943]; *Calame* v. *Stevens*, 110 Cal.App.2d 45, 48 [242 P.2d 109]). In *Nolen* v. *F. O. Engstrum Co.*, 175 Cal. 464, 466 [166 P. 346], it was said of a collapsing scaffolding: ''The fact that while the plaintiff was at work upon the scaffold it fell and precipitated him to the ground was of itself sufficient evidence that the scaffold was defectively constructed.'' The inference of negligent construction is adequately supported by the record at bar.

■ Defendant asserts error in giving a res ipsa loquitur instruction, claiming that the doctrine does not here apply. The ultimate test is stated in the Zentz case, at page 446, to be whether ''the accident is of such a nature that it can be said, in the light of past experience, that it probably was the result of negligence by someone and that the defendant is probably the person who is responsible.'' The collapse of such a catwalk ordinarily would not happen without negligence in its construction, and it being fairly inferable that there had been no change in its condition at or near the point of accident since defendant installed it, the further inference arises that the negligence was that of defendant, especially as it did not undertake to make a contrary evidential showing (see Zentz and other authorities, *supra*). This is a res ipsa case and such an instruction was properly given. The res ipsa inference is of itself enough to sustain the verdict in the absence of a successful charge of contributory negligence.

■ The form of the res ipsa instruction is criticized because of the use of the word ''collapse'' in the following context: ''If, and only in the event, you should find that there was an accidental occurrence as claimed by the plaintiff, namely: the collapse of what has been called in this case a 'catwalk', and if you should find that from that accidental event, as a proximate result thereof, plaintiff has suffered injury, you are instructed as follows.'' There is no virtue in this criticism, for the word ''collapse'' accurately describes what happened.

The claim that res ipsa does not apply because ''plaintiff testified to all the facts concerning how his accident hap-

pened'' is without merit. The matter is ruled adversely in *Leet* v. *Union Pac. R. R. Co.*, 25 Cal.2d 605, 620, 622 [155 P.2d 42, 158 A.L.R. 1008] ; see also *Freitas* v. *Peerless Stages, Inc.*, 108 Cal.App.2d 749, 756 [239 P.2d 671, 33 A.L.R.2d 778].

 It is urged that res ipsa does not apply in favor of a mere licensee and therefore that it was error to give the instruction at bar. The cited case of *Biondini* v. *Amship Corp., supra,* 81 Cal.App.2d 751, 767, adequately disposes of this argument: ''Amship argues that the doctrine has no application where the injured person is a bare licensee. That is undoubtedly the law. (*Brust* v. *C. J. Kubach Co.*, 130 Cal.App. 152 [19 P.2d 845].) But, as already pointed out, it was for the jury to say whether plaintiff was an invitee or licensee. If the jury should find that plaintiff was a mere licensee, then neither defendant is liable, and the doctrine of res ipsa loquitur is not applicable. But, if the jury should find that plaintiff is an invitee as to either or both corporate defendants, then, as to such defendant or defendants, the doctrine is applicable.''

Appellant's claim of contributory negligence is accorded the same type of treatment in its briefs as the subject of its own negligence. Again respondent's counsel meets the contention by arraying evidence sufficient to offset it. The result is that the question was one of fact for the jury to decide. It held against defendant and the trial judge denied a motion for new trial. *Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826], is apposite: ''True, contributory negligence may be found by the trier of fact from the plaintiffs' own evidence. But cases in which it can be said that the negligence of plaintiff contributes proximately to the accident as a matter of law are rare. The rule has been stated in various ways in a legion of cases, that contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists; that reasonable or sensible men could have drawn that conclusion and none other; that where there are different inferences that may be drawn, one for and one against, the one against will be followed; and that before it can be held as a matter of law that contributory negligence exists, the evidence must point unerringly to that conclusion.'' *Bady* v. *Detwiler*, 127 Cal. App.2d 321, 339 [273 P.2d 941] : ''It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence,

that the court can say, as a matter of law, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence the question is one of fact for the jury.''

The fact that one workman, Weinhart, saw that the catwalk was not safe two or three days before the accident does no more than furnish a factor to be considered by the jury. This was plaintiff's first visit to the roof girders and he saw no dangerous condition in the catwalk. It does not necessarily follow that what one workman sees every one of them will notice. The plaintiff was not bound to make an inspection of the place or appliance provided for his work (*Devens* v. *Goldberg, supra,* 33 Cal.2d 173, 180; *Emery* v. *Pacific Tel. & Tel. Co.,* 43 Cal.App.2d 402, 409 [110 P.2d 1079]; *Starr* v. *Kreuzberger,* 129 Cal. 123, 129 [61 P. 787, 79 Am.St.Rep. 92]), and he was entitled to assume, until a reasonable man in his place would be apprised of the contrary, that a safe place to work had been provided (*Popejoy* v. *Hannon,* 37 Cal.2d 159, 171 [231 P.2d 484]; *Emery* v. *Pacific Tel. & Tel. Co., supra,* 43 Cal.App.2d 402, 409; *Moran* v. *Zenith Oil Co.,* 92 Cal.App.2d 236, 243 [206 P.2d 679]; *Goldsmith* v. *Mills,* 130 Cal.App.2d 493, 496 [279 P.2d 51]). The question of whether a dangerous condition is an obvious one is for the jury (*Revels* v. *Southern Calif. Edison Co., supra,* 113 Cal.App.2d 673, 679; *Pauly* v. *King,* 44 Cal.2d 649, 656-658 [284 P.2d 487]). The doctrine of assumption of risk is not here applicable (*Bickham* v. *Southern Calif. Edison Co.,* 120 Cal.App.2d 815, 823-824 [263 P.2d 32]; *Popejoy* v. *Hannon,* 37 Cal.2d 159, 171 [231 P.2d 484]; *Austin* v. *Riverside Portland Cement Co.,* 44 Cal.2d 225, 235 [282 P.2d 69]). The last cited case explains the difference between assumption of risk and contributory negligence. Assuming that the jurors accepted Weinhart's testimony upon the unsafe condition of the runway, it was for them to say whether plaintiff's failure to notice what someone else had seen was negligence on his part.

The claim that plaintiff was a mere licensee when on the catwalk provided by defendant for use of the employees of the subcontractor is without substance (*Revels* v. *Southern Calif. Edison Co., supra,* 113 Cal.App.2d 673, 677). The most that can be said is that this was a jury question and was decided against appellant.

The court's refusal to instruct upon unavoidable

accident was not error. Conceding the request to have been a proper one the court had discretion to give or refuse it.

Unavoidable accident merely means one which occurred without negligence on the part of either party (*Parker* v. *Womack*, 37 Cal.2d 116, 120 [230 P.2d 823].)

The instructions given amply covered the fact that defendant is not liable in the absence of negligence on its part. That the refusal of an unavoidable accident instruction is not error when the subject is thus adequately covered was held in *Jaeger* v. *Chapman*, 95 Cal.App.2d 520, 522 [213 P.2d 404]; *McMahon* v. *Marshall*, 111 Cal.App.2d 248, 250 [244 P.2d 481]; *Lloyd* v. *Southern Pac. Co.*, 111 Cal.App.2d 626, 636 [245 P.2d 583]; *Goodwin* v. *Braden*, 134 Cal.App.2d 34, 39-40 [285 P.2d 330].

Appellant claims error in an instruction defining implied invitation "with reference to the use of that term as applied to a licensee." The text is not quoted but a casual transcript reference is given. An examination of that instruction reveals that there was no error. The same is true of refusal to give BAJI 212-A (for the text of which we must resort to the book itself in the absence of a transcript reference). Indeed we do not find that the giving of 212-A was requested.

Complaint of the instruction that "if some fellow-workman of the plaintiff has knowledge of a dangerous condition, such knowledge on the part of a fellow workman is not to be imputed to the plaintiff herein, unless such knowledge was actually communicated to the plaintiff," is misplaced. It correctly states the law. (*Pushcart* v. *New York Shipbuilding Co.*, 81 N.J.L. 261 [81 A. 113]; *Glidden* v. *Public Service Co. of New Hampshire*, 88 N.H. 4 [183 A. 865, 867]; *Illinois Cent. R. R. Co.* v. *Pirtle*, 47 Ill.App. 498, 500; *Covey* v. *Hannibal & St. J. Ry. Co.*, 27 Mo.App. 170, 178; *Goshorn* v. *Wheeling Mold & Foundry Co.*, 65 W.Va. 250 [64 S.E. 22]; *Noble* v. *Bessemer S. S. Co.*, 127 Mich. 103 [86 N.W. 520, 89 Am.St.Rep. 461, 54 L.R.A. 456]; 35 Am.Jur. (Master and Servant) § 314, p. 743; 39 C.J. § 1044, p. 834; 56 C.J.S. § 431, p. 1257.) Appellant's counsel says that it "should have included the further element that whatever was obvious to the fellow-workmen of the plaintiff should likewise be obvious to the plaintiff in the exercise of due care." Such an addition would have been argumentative and was properly denied by the court, if indeed it was requested. Counsel does not so assert.

The instruction defining a licensee is not erroneous,

as claimed. It reads: "A licensee is one who goes upon the land or premises of another, or upon a portion of said land or premises, by the express or implied permission of that other, but who is not an invitee, as that term has been defined in my instructions, as to that land or premises or portion thereof."

▮ Complaint is made of the giving of instructions concerning certain industrial safety orders which cover the matter of construction of catwalks, scaffolds, and the like. The claim is that this is error *per se,* reliance being placed on *Hard* v. *Hollywood Turf Club,* 112 Cal.App.2d 263 [246 P.2d 716], and *Hill* v. *Eaton & Smith,* 65 Cal.App.2d 11 [149 P.2d 762]. Each of those cases turned upon the legal conclusion that the statute (in the Hard case) or the safety order (in Hill) was not provided for the protection of a class to which plaintiff belonged. The propriety of such an instruction is now settled by *Armenta* v. *Churchill,* 42 Cal.2d 448, 455 [267 P.2d 303]. That case not only holds that such an instruction should be given, but also states that violation of such an order is negligence *per se.* (See also *Pierson* v. *Holly Sugar Corp.,* 107 Cal.App.2d 298, 302 [237 P.2d 28].)

Refusal of instructions defining the issues and setting forth defendant's theory of the case is assigned as prejudicial. The first request discussed by counsel was adequately covered by the giving of BAJI 113; moreover, it was definitely slanted in favor of defendant. There was no abuse of discretion in the court's refusal to give it.

The next four requests tender the issue of licensee, which is adequately covered by instructions given. ▮ Moreover, each of them contains one or more faulty statements of the law. Of course, the court was not bound to modify and then give them as modified. (*Sloan* v. *Stearns,* 137 Cal.App.2d 289, 300 [290 P.2d 382].)

▮ V. H. Newton, the foreman under whom plaintiff worked, was confronted on cross-examination by a written statement which concluded with this: "I don't see how James I. Barnes Co. or their employees could be blamed for this accident." After certain preliminaries counsel for defendant asserted that plaintiff's attorney had "stated that after the witness read the statement I may read it to the jury"; the record shows this to be correct. The statement was read to the jury and was then offered in evidence by the defendant. But the court of its own motion excluded same, saying that it could be considered only for purpose

of impeachment and "you know the statement is not admissible in evidence." Later, in chambers, plaintiff's attorney moved to strike the portion which is above quoted and the court remarked, "I am inclined to believe that in the interests of justice the motion should be granted and I should instruct the jury to disregard that portion of the statement." This was done. Appellant says that this was error, but counsel is mistaken. It is argued that this was an admission of a party but clearly that is not the case, for Newton, the witness, was a foreman employed by plaintiff's employer and was in no sense the agent of plaintiff. This conclusion of Newton's was not impeachment in fact and it was properly stricken by the court for it was immaterial what the witness thought about the merits of the case and it could have been prejudicial to plaintiff's cause. The fact that it went into evidence without objection did not render the court's action improper. His ruling was but the exercise of a sound judicial discretion. (See *Dastagir* v. *Dastagir*, 109 Cal.App.2d 809, 816, 819 [241 P.2d 656]; *Trancoso* v. *Trancoso*, 96 Cal.App.2d 797, 798 [216 P.2d 172]; *Hoel* v. *City of Los Angeles*, 136 Cal.App.2d 295, 307 [288 P.2d 989]; *Miller* v. *Republic Grocery, Inc.*, 110 Cal. App.2d 187, 192 [242 P.2d 396]; *Gantner* v. *Gantner*, 39 Cal. 2d 272, 278 [246 P.2d 923].)

Refusal to give BAJI 140 is urged as error. It reads: "General human experience justifies the inference that when one looks in the direction of an object clearly visible, he sees it, and that when he listens, he hears that which is clearly audible. When there is evidence to the effect that one did look, but did not see that which was in plain sight, or that he listened, but did not hear that which he could have heard in the exercise of ordinary care, it follows that either there is an irreconcilable conflict in such evidence or the person was negligently inattentive." The instruction was not appropriate for plaintiff did not say he looked and did not see. He assumed, as he had a right to do without inspection, that the place provided for him was a safe place for his work. Clearly there was no abuse of discretion in denying this request.

Excessive verdict. This claim is disposed of by the following language of *Leming* v. *Oilfields Trucking Co.*, 44 Cal.2d 343, 356 [282 P.2d 23]: "Since defendants' claim of excessive damages is primarily factual in nature, they are required to set forth in their briefs all the material evidence on the point, and unless this is done their contention is

deemed to be waived. A reviewing court starts with the presumption that the record contains evidence to sustain every finding of fact, and it is not the province of such a court to search the record in order to ascertain whether it contains evidence which will support a contention made by either party to an appeal.''

Other claims of error do not require discussion.

The judgment is affirmed. The attempted appeal from the verdict is dismissed. (3 Cal.Jur.2d § 52, p. 483.)

Moore, P. J., and Fox, J., concurred.

A petition for a rehearing was denied July 24, 1956, and appellants' petition for a hearing by the Supreme Court was denied August 21, 1956.