[L. A. No. 23300. In Bank. Apr. 6, 1955.]

GRADY AUSTIN, Respondent, v. RIVERSIDE PORTLAND CEMENT COMPANY (a Corporation), Appellant.

[L. A. No. 23301. In Bank. Apr. 6, 1955.]

WILLIS LYLE BOEHM, Respondent, v. RIVERSIDE PORTLAND CEMENT COMPANY (a Corporation), Appellant.

Swing & Gillespie and Donald S. Gillespie for Appellant.

Long & Levit, William H. Levit, Bert W. Levit, Curtis, Knauf, Henry & Farrell and John P. Knauf for Respondents.

CARTER, J.—In these actions plaintiffs sought damages for personal injuries alleged to have been caused by the negligence of Riverside Portland Cement Company, hereafter referred to as defendant, and California Electric Power Company, hereafter referred to as California. The jury awarded $50,000 to plaintiff Austin (reduced to $25,000 on motion for new trial) and $100,000 to plaintiff Boehm against defendant. Its verdict was for California and against plaintiffs. The injuries were caused by electricity burns when a crane came in contact with an overhead conduit of electricity.

Defendant appeals from the judgments entered on the verdicts. It asserts that the evidence was insufficient to establish any negligence on its part; that any claimed negligence on its part was not the proximate cause of the injuries; that plaintiffs were contributively negligent as a matter of law; and error was committed in the giving of instructions to the jury.

Defendant owns and operates a plant for the manufacture of cement on a plot of about 6 acres of ground. A contract was made between it and Haddock Company to perform, as independent contractor, extensive alteration and construction work on the plant and premises and Haddock was engaged in doing repair work for defendant on one of defendant's rock crushers at the time of the accident on January 10, 1947. Plaintiffs were Haddock's employees. The job was a "rush" job and it was known by defendant that the work would require night as well as day work. At all times defendant continued the operation of its plant night and day. It retained control of its premises and plant, although not of Haddock's employees, equipment and operations, and had a man on the job (Mr. Brophy, at the time here pertinent) whose duties were to observe Haddock's work and to represent defendant in connection therewith. Haddock was to interfere as little as possible in its work with the operation by defendant of its plant. Defendant through its supervisory employees knew that Haddock frequently used cranes with 60-foot booms* in its work; that the cranes worked in various

---

*A crane as referred to consists of a mobile truck or tractor on which is mounted a boom and the machinery necessary to raise and

places about the place in the vicinity of and under the power lines thereon; that they were necessary to perform the work; and that a danger existed from the possibility of a crane coming too close to a power line; it also knew that much of Haddock's work was done at night. The use of a crane was the normal and usual method used as a part of the process of repairing a rock crusher. The same crusher had been repaired by Haddock in December, 1946, and a crane was used.

On defendant's premises, as a means of access to the crusher to be repaired, was a ramp or private road. Crossing the road, and about 160 feet from the crusher, California owned and maintained an uninsulated three-wire power line carrying 33,000 volts for use by defendant in its plant. The wires were 43.8 feet above the ground. While, as stated the line was owned by California, defendant could request and the request would be granted, to have the power shut off—the line deenergized. In fact the request had been granted on previous occasions. Haddock had no authority to have the lines deenergized. Such deenergization would stop the operation of defendant's plant but would cause no damage thereto other than the loss of production during the shutdown and the deenergization and reenergization is a simple process of opening and closing a switch. The crusher repair job would take several hours. There also was no obstacle to the posting of warnings by defendant. (The poles supporting the wires had notices of high voltage presumably placed there by California.) In addition to the general knowledge of defendant of the danger of cranes operating near power lines, it had specific knowledge that the deenergization of those lines, when cranes were being operated near the power lines, was a proper safety precaution. Prior to the repair job on the crusher in December, and in connection therewith, Haddock's superintendent Martin requested defendant's superintendent Brophy that the power be shut off so it would be safe to move a crane about and Brophy refused because it would require the shutdown of defendant's plant. (There is considerable conflict on this issue but the testimony is reasonably susceptible of the foregoing.) It could be inferred that defendant knew the same deenergization would be needed for the safety of Haddock's men during the January 10th repair of the crusher but should not expect Haddock to make the request in view of the recent refusal.

lower it and its cables. The operator of the boom performed his work in a cab on the truck or tractor and the driver of the truck or tractor performed his function from a cab on the truck or tractor.

The only lights supplied by defendant in the vicinity of the crusher were those on a tower thereon. Lights on portable standards were maintained by Haddock.

The rock crusher consisted of a structure in which rock was deposited. It was crushed by a mauler attached to the end of a 20-foot steel shaft. The repair required that the shaft and mauler be removed from the structure in order that the joinder of the mauler and the shaft could be made secure by removing the zinc holding the two together and placing new zinc in its place.

Late in the afternoon of January 10th, Haddock's employees were directed to assist in the repair of the crusher and the work thereon proceeded between 5:30 and 6 o'clock. A crane together with a boom cable operator and truck operator were present to lift the shaft and mauler. Plaintiffs testified that it was dark and the power line was not visible; there was barely enough light to work on the crane. To fit the crane for the job required a rigging of three cables on the boom on the lifting end of which was the lifting hook. Plaintiffs were assisting in rigging. The boom was parallel to the ground, the end being five or six feet above the ground. The three cable rigging had been done and plaintiffs went to the crane truck to get the headache ball, a weight to be attached near the lifting hook to keep the cables taut and in proper place. On returning to the end of the cable and hook to attach the ball, the boom had been raised to about 45 degrees and evidently the truck had been moved toward the power line to shorten the distance the ball would have to be carried. The hook was several feet above the ground. Plaintiffs were carrying the ball together and Austin grasped the hook to attach the ball. The hook was charged with electricity because of the proximity of the boom to the power line. When Austin grasped the hook, the electricity flowed through him, the ball and Boehm resulting in the injuries for which damages were awarded.

This court recently stated the rule with reference to the duty owed by one who has control of electricity. " 'On the subject of negligence the standard of care is, that one maintaining wires carrying electricity is required to exercise the care that a person of ordinary prudence would exercise under the circumstances. Among the circumstances are the well known dangerous character of electricity and the inherent risk of injury to persons or property if it escapes. Hence, the care used must be commensurate with and pro-

portionate to that danger. [Citations.] ■ Specific application of that standard requires that wires carrying electricity must be carefully and properly insulated by those maintaining them at all places where there is a reasonable probability of injury to persons or property therefrom. [Citations.] ■ Upon those controlling such instrumentality and force is imposed the duty of reasonable and prompt inspection of the wires and appliances and to be diligent therein. [Citations.] And, in the places where there is a probability of injury, they must not only make the wires safe by proper insulation, but as stated in *Dow* v. *Sunset Tel. & Tel. Co.*, 157 Cal. 182, 186 [106 P. 587], ''keep them so by vigilant oversight and repair.'' ' '' (*Dunn* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 265, 273 [272 P.2d 745].) ■ It is true that California rather than defendant was maintaining the power line, yet defendant had control to the extent that it could have the line deenergized and as it controlled its premises it could provide adequate lighting for night work and proper warnings. Hence the care required of it must be measured by the hazard inherent in highly charged wires together with the duty it owed to Haddock's employees (plaintiffs) who were as to defendant, insofar as it had control of the premises, invitees or business visitors rather than licensees or trespassers; that their status was invitees is clear. (*Delk* v. *Mobilhomes, Inc.*, 118 Cal.App.2d 529 [258 P.2d 75]; *Lamar* v. *John & Wade, Inc.*, 70 Cal.App.2d 806 [161 P.2d 970]; *Bazzoli* v. *Nance's Sanitarium, Inc.*, 109 Cal. App.2d 232 [240 P.2d 672]; *Dingman* v. *A. F. Mattock Co.*, 15 Cal.2d 622 [104 P.2d 26]; *La Malfa* v. *Piombo Bros.*, 70 Cal.App.2d 840 [161 P.2d 964]; Prosser on Torts, p. 636.) ■ ''One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for bodily harm to others, for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care. . . . The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the

work which he has ordered to be done from causing injury to others.'' (Rest., Torts, § 414.) ██ ██ Generally, the owner of property ''. . . is under a duty to keep in safe condition all portions of premises over which he has control'' (*Sexton* v. *Brooks*, 39 Cal.2d 153, 156 [245 P.2d 496]) and in more detail: ''A possessor of land who knows, or reasonably should know, of a natural or artificial condition upon his premises which, he should foresee, exposes his business visitors to an unreasonable risk, and who has no basis for believing that they will discover the condition or realize the risk involved therein, is under a duty to exercise ordinary care either to make the condition reasonably safe for their use or to give a warning adequate to enable them to avoid the harm.'' (*Crane* v. *Smith*, 23 Cal.2d 288, 296 [144 P.2d 356]; see also Prosser on Torts, pp. 642 et seq.)

██ Under the facts in the instant case, the jury was justified in finding, as it impliedly did, that defendant was negligent and its negligence was the proximate cause of plaintiffs' injuries. The jury could conclude that, knowing as defendant did, that Haddock's cranes operated in the vicinity of the power line, unless the power was cut off a danger existed; that work called for night operation and the lighting was such that the wires were not visible; that it should have anticipated that the boom of the crane might come in contact with the wires permitting the electricity to be conducted to a place where it would cause injury; that there was not adequate basis for believing that Haddock's employees would discover the condition or realize the danger involved because the wires were not visible and the employees might justifiably assume that they were not charged or they might momentarily have forgotten their presence due to the rush job and nature of the work.

Defendant refers to the testimony of Martin, Haddock's superintendent, that he knew of the presence of the wires when the work on the crusher was being done and that of plaintiffs that they knew of the wires. Martin's testimony was contradictory and could have been disbelieved by the jury. The jury could have concluded that while plaintiffs knew generally of the presence of the wires, the nature of the job and visibility conditions were such that the danger was not so obvious to plaintiffs that defendant would be relieved of liability.

Stress is also laid upon the duty under the statutes and regulations and that it was Haddock's nondelegable duty

to its employees to furnish a safe place to work, not operate near high voltage wires (see *Hard* v. *Hollywood Turf Club*, 112 Cal.App.2d 263 [246 P.2d 716]) and it is urged that its breach of duty was the cause of the injury. It should be remembered, however, that defendant also owed a duty as above discussed. ██ ██ Defendant's negligence need not be the sole cause of an injury; it is enough if it is a contributory factor which is a proximate cause of the injury (*Westover* v. *City of Los Angeles*, 20 Cal.2d 635 [128 P.2d 350]; *McEvoy* v. *American Pool Corp.*, 32 Cal.2d 295 [195 P.2d 783]; 19 Cal.Jur. 557) and " 'If the realizable likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious or criminal does not prevent the actor from being liable for harm caused thereby.' (Rest. Torts, § 449.) It has been held that the rules on the subject in the Restatement of Torts, sections 442-453, are applicable in this state. (*Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678].)" (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 219 [157 P.2d 372, 158 A.L.R. 872].) The cases relied upon by defendant are distinguishable. For illustration, in *Hayden* v. *Paramount Productions, Inc.*, 33 Cal.App.2d 287 [91 P.2d 231], among other differences there was no knowledge by defendant of the use of cranes or the work in progress. The work was not a rush job and was done in the daylight.

██ The foregoing discussion is also pertinent to the question of contributory negligence. On the basis of the above discussed evidence the jury was justified in finding that plaintiffs were free from contributory negligence. While plaintiffs may have observed the wires on defendant's premises they may, as persons of ordinary prudence, have momentarily forgotten their presence under the circumstances.

██ Momentary forgetfulness may be in accord with the conduct of a reasonably prudent man. (See *Bickham* v. *Southern Calif. Edison Co.*, 120 Cal.App.2d 815 [263 P.2d 32]; *Bartuluci* v. *San Joaquin L. & P. Corp.*, 21 Cal.App.2d 376 [69 P.2d 440]; *Nevis* v. *Pacific Gas & Elec. Co.*, 43 Cal.2d 626 [275 P.2d 761]; and cases cited *infra*.)

██ Moreover, it should be emphasized that the questions of negligence, proximate cause and contributory negligence under circumstances such as we have here are to be determined by the trier of fact. (*Nevis* v. *Pacific Gas & Elec. Co., supra*, 43 Cal.2d 626.)

Defendant asserts that plaintiffs assumed the risk as a matter of law. From the foregoing discussion there was sufficient evidence from which the jury could conclude that plaintiffs did not assume the risk. ▮ The rule on assumption of risk was recently stated by this court. "The defenses of assumption of risk and contributory negligence are based on different theories. Contributory negligence arises from a lack of due care. The defense of assumption of risk, on the other hand, will negative liability regardless of the fact that plaintiff may have acted with due care. . . . ▮ It is available when there has been a voluntary acceptance of a risk and such acceptance, whether express or implied, has been made with knowledge and appreciation of the risk. . . .
▮ Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge, and there may be an assumption of the risk, but where it merely appears that he should or could have discovered the danger by the exercise of ordinary care, the defense is contributory negligence and not assumption of risk." (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904].) ▮ Defendant's offered jury instructions on the defense of assumption of risk were refused but the basic one was erroneous under the Prescott case in that it advised the jury that plaintiffs would have assumed the risk if in the exercise of ordinary care they should have known of and appreciated the risk rather than that they must have had knowledge of the danger. The other instructions were connected with the basic one and would have been confusing if the basic one were not given. Such instructions are erroneous and the trial court was under no duty to revise them to state the law accurately. (*Prescott* v. *Ralphs Grocery Co., supra*, 42 Cal.2d 158; *Hayes* v. *Richfield Oil Corp.*, 38 Cal.2d 375 [240 P.2d 580]; *Tossman* v. *Newman*, 37 Cal.2d 522 [233 P.2d 1].)
▮ The court, however, on its initiative gave an instruction that it was not instructing on "the doctrine of assumption of risk because that doctrine is not applicable in this case. However, the court is instructing you on the doctrine of contributory negligence" and the instructions on that issue will govern your deliberations on the issue of contributory negligence. The evidence would have justified an instruction on assumption of risk; however, we believe that, while assumption of risk and contributory negligence are distinguishable

and based on different theories (*Prescott* v. *Ralphs Grocery Co., supra,* 42 Cal.2d 158), defendant suffered no prejudice by the court's instruction because elsewhere the court did not advise the jury what is meant by the "doctrine of assumption of risk" and other instructions advised the jury that plaintiffs could not recover if they placed themselves in a position of danger. Indeed, some of those instructions sound like assumption of risk or at least gave the jury the elements thereof and told it that plaintiffs could not recover if those conditions existed. (See *Hayes* v. *Richfield Oil Corp., supra,* 38 Cal.2d 375, 385.) For illustration the jury was instructed: "Whether or not it is negligence for one to proceed into a dangerous situation of which he had previous notice is a question of fact not always and necessarily to be answered in the affirmative. *If at the time he was aware of the danger and also appreciated its extent and if he voluntarily and unnecessarily exposed himself to it then he was negligent as a matter of law.* But to forget a danger once known to exist or to be in a state of abstraction or absent-mindedness or to err in judgment may or may not be negligent depending on whether or not in the circumstances it shows a want of ordinary care. Also the jury must consider the character of the notice received, whether recent or remote and the impression such information would make upon the mind of an ordinarily prudent person in a like situation." (Emphasis added.) And as part of an instruction with regard to relying upon care by another: "One is not justified in ignoring obvious danger although it is created by another's misconduct nor is he ever excused from exercising ordinary care." And: ". . . a person must make a reasonable use of his faculties of sight and hearing to avoid injury from the lawful acts of others, and to avoid injury to others engaged in acts which they are lawfully entitled to perform. Furthermore, one who approaches a place which he knows or in the exercise of ordinary care ought to know to be one of danger is bound to use ordinary care to avoid causing injury or being injured."

 Defendant contends error in the following instruction requested by plaintiffs but modified by the court: "If you should find that plaintiff knew that high voltage lines were present, . . . and constituted a hazard, such fact does not *necessarily establish* that plaintiff was contributively negligent. Mere forgetfulness of a known danger will not bar recovery unless such forgetfulness constitutes negligence

under the circumstances. In this connection, you may consider that a workman cannot be expected to retain in his memory at all times because of the nature of his work the fact that there are dangerous conditions surrounding him. A workman must do his work where required to do it and is necessarily bound to put his attention on such work while performing it, and it is for you to determine whether in so doing he acted as a prudent person under the circumstances.'' It claims that the instruction assumes the wires were a hazard and defendant was negligent because they were on its premises. We do not find such assumptions. The instruction deals with what plaintiffs knew and in other instructions the question of hazard and negligence was adequate.

Defendant's main contention is that the instruction is not a correct statement of the law in that momentary forgetfulness cannot indicate lack of contributory negligence unless plaintiff is acting after being confronted with a sudden and disturbing situation which causes the forgetfulness. It should be remembered the work in which plaintiffs were engaged required them to be in the vicinity of the wires and the job was a ''rush'' one being done in the dark. The rule with respect to the bearing of forgetfulness on contributory negligence has been stated in many cases. As expressed in many cases, and recent ones, whether forgetfulness of a known danger constitutes contributory negligence is a question for the trier of fact, giving consideration to the circumstances even though there is no sudden disturbance or peril confronting the plaintiff and causing the lapse of memory; to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury. (*Hayes* v. *Richfield Oil Corp., supra,* 38 Cal.2d 375, 385; *Kirk* v. *Los Angeles Ry. Corp.,* 26 Cal.2d 833, 840 [161 P.2d 673, 164 A.L.R. 1]; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647, 656 [122 P.2d 576]; *Gibson* v. *County of Mendocino,* 16 Cal.2d 80, 89 [105 P.2d 105]; *Hall* v. *Barber Door Co.,* 218 Cal. 412, 420 [23 P.2d 279]; *Meindersee* v. *Meyers,* 188 Cal. 498, 503-504 [205 P. 1078]; *Giraudi* v. *Electric Imp. Co.,* 107 Cal. 120, 125 [40 P. 108, 48 Am.St.Rep. 114, 28 L.R.A. 596]; *Smith* v. *Southern Pac. Co.,* 201 Cal. 57 [255 P. 500]; *Roseberry* v. *Edward F. Niehaus & Co.,* 166 Cal. 481, 483 [137 P. 232]; *Jacobson* v. *Oakland Meat etc. Co.,* 161 Cal. 425, 430 [119 P. 653, Ann.Cas. 1913B 1194]; *Harris* v. *Joffe,* 28 Cal.2d 418, 425 [170 P.2d 454]; see cases collected 19 Cal.Jur. 587-593,

8 Cal.Jur. 10-Yr. Supp [1948 Rev.] 324-325.) Such cases as *Reynolds* v. *Los Angeles Gas & Elec. Co.,* 162 Cal. 327 [122 P. 962], and *Ergo* v. *Merced Falls Gas & Elec. Co.,* 161 Cal. 334 [119 P. 101, 41 L.R.A.N.S. 79] (see cases collected 19 Cal.Jur. 586-587, 598-600) which state the proposition that a person is necessarily contributively negligent as a matter of law when he forgets a known danger unless the lapse of memory is due to a sudden disturbance are too broad in the light of the cases above cited. Moreover they indicate there may be circumstances justifying forgetfulness other than a sudden emergency, such as haste in doing the work as we have here. We have heretofore discussed the nature and character of the work being performed and the surrounding circumstances in the instant case. The instruction correctly states the law and leaves the question to the jury mentioning the circumstances of the work. The problem was well summarized in *Andre* v. *Allynn,* 84 Cal.App.2d 347, 351 [190 P.2d 47], quoting from *Schleif* v. *Grigsby,* 88 Cal.App. 174 [263 P. 255] : " 'The rule of law contended for is as follows: Momentary forgetfulness of a known danger not induced by a sudden and adequate disturbing cause is contributory negligence, qualifying this by the statement that to forget is not negligence unless it shows a want of ordinary care. The qualification is not absolute but depends upon the facts of the particular case. There is a long line of cases holding that forgetfulness is as a matter of law negligence that will defeat recovery [citing cases.] It is upon this theory that appellant bases her claim of contributory negligence chargeable to respondent. However, as is said in *Jacobson* v. *Oakland Meat [& Packing] Co.,* 161 Cal. [425] 430 [119 P. 653, Ann.Cas. 1913B 1194], one element in all these cases is the plaintiff's familiarity with the danger he forgot. To arbitrarily adopt as a standard of negligence *per se* the rule that if one may be charged with a knowledge, past or present, of a danger, he is precluded from recovery for injuries sustained therefrom and let the rule rest there for all cases would be to establish a doctrine dangerous in its application and unsound in principle and one not warranted by the present weight of authority. Courts are unwilling to declare that forgetting a known danger always amounts to negligence (*Jacobson* v. *Oakland Meat [& Packing] Co., supra,* [161 Cal. 425]). The true rule to be deduced from the cases cited is that the forgetfulness shown must be under circumstances sufficient to enable a court to determine that such lack of memory constituted negligence *per se. . . .' "*

Defendant attacks the following jury instruction: "The amount of care which a workman is bound to exercise for his own safety must be determined by a rule of reasonable necessity. When a person's lawful employment requires that he work in a dangerous location or a place that involves unusual possibilities of injury and to give attention to his work, or requires that, in the lines of his duty, he takes risks which ordinarily a reasonably prudent person would avoid, the necessities of such a situation, in so far as they limit the caution that he may take for his own safety, lessen the amount of caution required of him by law in the exercise of ordinary care." It contends that here plaintiffs' work on the crane did not require them to work on the crane in dangerous proximity to the wires and the wires were not dangerous because they were stationary and 43 feet above ground. As we have seen, there is evidence that the work was done in the normal manner and place and plaintiffs were required to perform it. It is urged that the rule announced in the instruction only applies to persons whose work must be performed in public streets where there are moving vehicles. (See *Jacobs* v. *Bozzani Motors, Ltd.*, 109 Cal.App.2d 681 [241 P.2d 642].)

It has long been recognized that ". . . where a person must work in a position of possible danger the amount of care which he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. (*Barboza* v. *Pacific Portland Cement Co.*, 162 Cal. 36, 40 [120 P. 767]; *Roddy* v. *American Smelting etc. Co.*, 34 Cal.App.2d 457, 460-461 [93 P.2d 841]; *Mecham* v. *Crump*, 137 Cal.App. 200, 203-204 [30 P.2d 568]; *Woods* v. *Wisdom*, 133 Cal.App. 694, 696-697 [24 P.2d 863]; *Jones* v. *Hedges*, 123 Cal.App. 742, 752 [12 P.2d 111]; *Driscoll* v. *California St. R. R. Co.*, 80 Cal.App. 208, 215 et seq. [250 P. 1062].) Whether or not respondent was guilty of contributory negligence on all the facts disclosed by the evidence was a jury question." (*Ostertag* v. *Bethlehem etc. Corp.*, 65 Cal.App.2d 795, 801 [151 P.2d 647].) We see no reason why the rule should be different whether the danger is stationary or moving. The question of whether plaintiffs were acting as persons of ordinary prudence under the circumstances was left to the jury by that instruction and others on the same subject.

The following jury instructions are challenged. Instruction No. 64: "It was the duty of the defendant cement

company to use ordinary care to furnish plaintiffs with a safe place to work: The general rule in that regard is that an owner of premises, who, by invitation, express or implied, induces or permits a workman to come on the premises for the performance of work for the benefit of the owner, is required to use ordinary care to supply him with a reasonably safe place in which to work, and to warn him of any existing danger which he knew or, in the exercise of ordinary care, should have known. This duty to plaintiffs was not limited to conditions if any actually known to be dangerous but extended also to conditions if any which might have been found to be dangerous by the exercise of ordinary care by defendant cement company." Instruction No. 65: "If defendant Riverside Cement Co. knew or in the exercise of ordinary care should have known that work of the general type in which plaintiff was engaged at the time of the accident was reasonably likely to occur in the vicinity of the high voltage lines, then said defendant cement company was under a duty to exercise ordinary care to prevent the occurrence of injuries reasonably likely to occur in connection with such work through contact with said wires, if any. It is not necessary that the cement company have knowledge of or be able to foresee the exact work or manner in which it was to be done, but it is sufficient if you find that the cement company knew or in the exercise of ordinary care should reasonably have anticipated that work of this general nature was likely to be done on its premises." Defendant's attack on these instructions is that they do not include the principle that an owner or occupier of premises is not liable for obvious dangers and indicate that the defendant as owner would be liable for the negligence of Haddock or conditions created by it. (See *Hard* v. *Hollywood Turf Club, supra,* 112 Cal.App.2d 263; *Shanley* v. *American Olive Co.,* 185 Cal. 552 [197 P. 793]; *Mautino* v. *Sutter Hospital Assn.,* 211 Cal. 556 [296 P. 76]; *Neuber* v. *Royal Realty Co.,* 86 Cal.App.2d 596 [195 P.2d 501].) The instructions correctly state the general duty of defendant as heretofore stated. There were not formula instructions which purported to embody all the bases for liability. In an instruction immediately following instruction No. 64 and in other instructions the jury was clearly advised that defendant was not required to give warning of obvious dangers. The instructions do not purport to hold defendant responsible for Haddock's negligence. But even if there were an intimation to that effect the jury was expressly instructed that the employer

of an independent contractor is not liable for the negligence of the contractor.

The judgments are affirmed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied May 4, 1955.