[Civ. No. 22444. Second Dist., Div. Three. Apr. 16, 1958.]

PEGGY JOYCE JOHNSON et al., Appellants, v. H. B. NICHOLSON et al., Defendants; KETTLER-KNOLLS, INC. (a Corporation) et al., Respondents.

LLEWELLYN PHILLIPS, JR., Appellant, v. KETTLER-KNOLLS, INC. (a Corporation) et al., Respondents.

Demler & Eckert, Charles E. Samuel, Clifton A. Hix and Elizabeth Hix for Appellants.

Ball, Hunt & Hart, Clarence S. Hunt, Hunter & Liljestrom and Gerald V. Barron for Respondents.

VALLÉE, J.—Appeals from judgments of nonsuit in two actions consolidated for decision. The first action is for damages for personal injuries by Llewellyn Phillips, Jr., against defendants Kettler-Knolls, Inc., Hal B. Hayes Construction Company, Clarence E. St. George, and Loren Conklin. The second action is for wrongful death by the surviving widow and two minor children of Ernest Johnson against the same defendants and Virgil Collier. The actions arose out of the same accident; they were consolidated for trial and tried before a jury. At the conclusion of plaintiffs' cases, on motion of defendants a nonsuit was granted in each case. Judgments for defendants followed. Plaintiff Phillips appeals from the judgment in favor of Kettler-Knolls, Inc., Hal B. Hayes Construction Company, and Clarence E. St. George. Plaintiffs Johnson appeal from the judgment in favor of the

same defendants and in favor of defendants Virgil Collier and Loren Conklin.[1]

Kettler-Knolls, Inc., and Hal B. Hayes Construction Company were the general contractors in the construction of a housing project in Muroc, California. St. George was their employee and field superintendent of the project. The buildings under construction were duplex and quad structures.

Professional Cleaning Service was a subcontractor performing cleanup operations. The deceased, Ernest Johnson, a man 23 years of age, was its employee and in charge of employees of that service. Plaintiff Phillips was one of its employees. One of the duties of Johnson and Phillips with respect to the floors in the buildings under construction consisted in scraping and cleaning the cement slab so that it would be clean and smooth for the tile layers to lay tile thereon. Defendant Virgil Collier was the tile-laying subcontractor. Defendant Loren Conklin was an employee of Collier engaged in laying the tile. He had been employed in laying tile about 22 years.

We shall, in accordance with the rule on review of a judgment of nonsuit, state the evidence and the reasonable inferences deducible therefrom in the light most favorable to plaintiffs. The accident happened in a quad, i.e., a four-unit apartment building known as Number 10. Johnson and Phillips first worked in Number 10 on January 7, 1953. They found that apartment 4—the one where the accident occurred—was difficult to clean; they could not get the bumps and spots off the concrete floors and get them smooth.

Phillips testified: On January 8, the day before the accident and after the floors in apartment 4 had been cleaned for the first time, St. George told him to have Johnson reclean the floors in apartment 4 because they were not clean enough for the tile layers, and to tell him to use something other than water. He relayed the message to Johnson that evening. The next morning Johnson and Phillips were together and saw St. George. Johnson went over to talk to him. He was gone about five minutes. After sweeping out some houses, Johnson and Phillips went to the general contractor's warehouse and storage yard to get 5 gallons of gasoline to clean the floors in apartment 4. Johnson went over to where St. George was,

---

[1]Plaintiff Phillips did not appeal from the judgment in favor of Virgil Collier and Loren Conklin.

got the key to the gasoline tank from him, came back, unlocked the tank, and pumped 5 gallons of gasoline.

Phillips testified he had a conversation with Johnson as to what directions were given him (Johnson) by St. George. He was then asked, "What did Mr. Johnson tell you that Mr. St. George said?" Defendants' objection was sustained.

After pumping the gasoline Phillips "put the lid on it and carried it to the back of the car and Mr. St. George drove up at that time." When Johnson finished pumping the gasoline he had the key in his hand; he walked over to St. George, stuck his hand in the window of St. George's car, and gave the key to the gasoline tank to St. George.

The duties of St. George were to coordinate the work between the subcontractors, tell them what he wanted done and when to do it. St. George testified that the day before the accident he told Johnson to reclean apartment 4 in Number 10; on the morning of the accident Johnson told him he was going to reclean the apartment and asked him if he could have some gasoline; he told him (Johnson) he could have it.

Johnson and Phillips went to Number 10; set the gasoline down outside; went into apartment 4; checked the gas outlets and the burners on the heaters and turned the pilot light off in a wall heater. The other outlets and pilot lights were all shut off. Phillips then started to spread the 5 gallons of gasoline and as he did so Johnson went behind him with a broom, sweeping it over the surface of the floors in apartment 4. They saw they did not have enough gasoline to cover all the floors. Phillips went to the warehouse and got another 5 gallons. The warehouseman asked him whom to charge it to; Phillips told him, the general contractor.

Phillips returned to apartment 4 with the gasoline, set it down on the front stoop, walked about 50 feet from the front door to where Johnson was sitting, and smoked a cigarette with him. Johnson had locked the back door and closed the windows of apartment 4; the front door was left "Nearly open all the way." The windows were closed to keep anyone from "walking over or looking in them with a cigarette," and the back door was locked so that no one would walk in with a cigarette. After finishing smoking Johnson and Phillips stomped out the cigarettes with their feet. They then got hand scrapers out of the car and stepped inside apartment 4 to see how it would clean off; "it" had dissolved somewhat and scraped much easier. They began to scrape the floor in

the living room. They had been scraping about three minutes when an explosion was heard in the bedroom area. When Phillips heard the explosion he looked toward the hall door and flames were coming from the general direction of the wall separating the adjoining apartment. The second can of gasoline remained on the front stoop until the time of the accident.

When Johnson and Phillips first went to apartment 4 on the morning of the accident, Phillips did not see any workmen around the building; the only cars in the area were at the end of another separate building. From the time he first went into the building until the explosion, Phillips had no knowledge anyone besides Johnson and him was working in the building. He testified he knew the tile layers "were down in the other building because of seeing this car." Phillips had not used gasoline before in cleaning floors, and it had never occurred to him to use it prior to the conversation Johnson had with St. George because there had not been need for it.

On the day before the accident St. George went to Number 10, found that the floors in apartment 3, the one next to where Johnson and Phillips worked, and in apartments 1 and 2 were ready for the tile; it was his job to tell the tile layers when to go in and lay the tile. Kennedy, foreman of the tile crew, had asked him to have the floors in apartment 4 recleaned. At the time and prior to the accident Kennedy was working in apartment 3. St. George knew of the danger of open flame and of open flame contacting gasoline. At no time did he say anything to Johnson or Phillips about the tile men working in apartment 1, 2, or 3 nor did he say anything to the tile men about Johnson and Phillips working in the adjacent apartment.

On the day of the accident Conklin was laying tile in apartment 3, the one adjoining the one in which Johnson and Phillips were working. Conklin was working in a bedroom closet about 2½ by 4 feet, the wall of which formed the bedroom wall of the apartment in which Johnson and Phillips were working. The baseboard was not installed until after the tile was laid and it had not been installed at the time, a fact known to Conklin.

Conklin was inside the closet with a lighted blowtorch in the closet doorway. He was using the blowtorch to cut tile in the closet. While he was working in the closet Mayer was

in the bedroom working with him. Conklin testified: "I believe I did make a comment to Mr. Mayer. 'Some gas smells very potent.' I think I said how strong that gas was. . . . Q. When you smelled that gasoline, your blowtorch was lit? A. Yes. Q. Did you turn it off? A. No. Q. You realized, did you not, that there was a danger if gasoline came in contact with an open flame? . . . THE WITNESS: There is always a danger, yes. There is a danger. Q. You knew that at the time of this accident, did you not, sir? A. Certainly." He was cutting the tile; he "let the torch sit on the floor." Conklin did not go into the apartment where Johnson and Phillips were working that morning because the foreman had told him it had to be recleaned. Conklin also testified: "Q. From your experience in this work, do they just use gasoline to clean those floors? A. It has been a habit of the trade to use gas, and I have quit three jobs rather than clean floors, because I had a flash fire like that three years ago. . . . I have known them to use gasoline to remove paint from the floor and I will not do it."

Within a minute or two after he smelled gasoline Conklin saw a fire around the edges of the wall; it was all around him. He testified: it was "Around the edges of the wall on the floor level, maybe two, three inches high. It was not up any degree of height." He ran out of the building.

Johnson died as a result of burns received in the fire; Phillips was severely injured.

The primary question is whether there was any substantial evidence from which the jury could have inferred that St. George or Conklin or both were negligent. ▪ It is hardly necessary to say that if inferences can be deduced reasonably and fairly from the evidence which sustain the allegations of the complaint, it is error to grant a motion for a judgment of nonsuit. ▪ Negligence may be established by circumstantial evidence, which is nothing more than one or more inferences which may be said to arise reasonably from a series of proven facts. ▪ A plaintiff relying on circumstantial evidence does not have to exclude the possibility of every other reasonable inference possibly deriving from the evidence. (*Jones* v. *Hotchkiss*, 147 Cal.App.2d 197, 201-202 [305 P.2d 129].) ▪ When different inferences as to negligence may be drawn from the evidence it is the duty of the court, on motion for a judgment of nonsuit, to submit the question to the jury.

Everyone is responsible for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person. (Civ. Code, § 1714.) Every person who suffers detriment from the unlawful act or omission of another may recover from the person in fault. (Civ. Code, § 3281.) ■ "All persons are required to use ordinary care to prevent others being injured as the result of their acts; ordinary care has been defined as that degree of care which people of ordinarily prudent behavior could be reasonably expected to exercise under the circumstances of a given case. ■ In other words, the care required must be in proportion to the danger to be avoided and the consequences that might reasonably be anticipated [citations]. ■ The risk incident to dealing with fire, firearms, explosive or highly inflammable matters, corrosive or otherwise dangerous or noxious fluids requires a great deal of care to be exercised. In other words, the standard of care required of the reasonable person when dealing with such dangerous articles is so great that a slight deviation therefrom will constitute negligence." (*Warner* v. *Santa Catalina Island Co.*, 44 Cal.2d 310, 317 [282 P.2d 12].)

St. George was an employee of the general contractor; he was in complete charge of the work and of the subcontractors. ■ "The contractor . . . has supervision over the entire building and its construction, including the work performed by a subcontractor, and where he negligently creates a condition, either by himself or through a subcontractor, he is primarily responsible for that condition and the consequences that may follow from it. He is in full control of the construction and knows or should know what is being placed in the building. Indeed, what is placed there is peculiarly within his knowledge." (*Dow* v. *Holly Manufacturing Co.*, 49 Cal.2d 720, 725 [321 P.2d 736].) ■ "The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected by the performance of the work." (*Hall* v. *Barber Door Co.*, 218 Cal. 412, 419 [23 P.2d 279].)

■ "The general rule is that a general contractor on a construction job who is in control of the premises is burdened with the duty to use ordinary care to provide a safe place for employees of a subcontractor to work, including the duty to warn such employees of a danger, either known to the general

contractor, or discoverable by the exercise of ordinary care, or otherwise to protect the employees from injury, and to avoid exposing them to injury on account of dangerous conditions. He is bound to take reasonable measures to protect the employees of a subcontractor from injuries likely to arise from places of danger about the building. If he neglects this duty by failing to give adequate notice or warning of the existence of a place of danger, he may be found liable to an employee of a subcontractor for resulting injury." (*Revels v. Southern Calif. Edison Co.*, 113 Cal.App.2d 673, 678 [248 P.2d 986] ; *Raich v. Aldon Const. Co.*, 129 Cal.App.2d 278, 284 [276 P.2d 822].)

St. George knew Johnson and Phillips were going to use gasoline to clean the floors in apartment 4 on the day of the accident. It could be inferred he instructed them to do so and that he furnished the gasoline. He knew, or should have known, the baseboard was not installed between apartment 4 and the adjoining apartment. It could be inferred he knew that gasoline might flow from apartment 4 into apartment 3. He knew the floors in the adjacent apartments were ready for the tile layers. It could be inferred he knew the tile layers would be working in the next apartment on the day of the accident. It was his job to tell the tile layers where and when to work. It could be inferred that is what he did. He knew the tile layers would use a blowtorch with an open flame. He did not warn either group of the presence of the other or take any precautions to prevent an accident. If St. George had reasonable grounds to apprehend that danger might follow the use of gasoline in the room adjoining that where Conklin was working with a blowtorch, reasonable care required that Johnson and Phillips be warned or that Conklin be told not to use the blowtorch while they were cleaning the floors. (*Young v. Bates Valve Bag Corp.*, 52 Cal.App.2d 86, 94 [125 P.2d 840].) From the evidence and reasonable inferences the jury could have found that St. George and thus his employers were negligent.

Conklin was an employee of a subcontractor. It is the duty of an employee of a subcontractor to exercise ordinary care for the safety of the employees of other subcontractors in a building under construction. (*Perry v. D. J. & T. Sullivan, Inc.*, 219 Cal. 384, 388-389 [26 P.2d 485] ; *Pease v. San Diego Unified Sch. Dist.*, 54 Cal.App.2d 20, 23 [128 P.2d 621].) It was the duty of Conklin to conduct his operations in such a manner as not to injure others. It was his

duty to exercise reasonable care; and that includes reasonable foresight as to harmful consequences of his acts and omissions. (*Darnold* v. *Voges,* 143 Cal.App.2d 230, 248 [300 P.2d 255].)

Conklin knew the floors in apartment 4 had to be recleaned. The morning of the accident he was in and out of apartments 1, 2, and 3 twice. He did not enter apartment 4. Johnson's car was parked in front of apartment 4. It could be inferred that Conklin knew, or should have known, that Johnson and Phillips were working in the adjoining apartment cleaning the floors on the day of the accident and that he knew gasoline was used sometimes to clean floors in preparation for laying tile. Conklin was using a blowtorch with an open flame. He smelled gasoline. It was "very potent." He knew the baseboard between the closet where he was working and the adjoining apartment had not been installed. Instead of immediately shutting off his blowtorch he continued to work in the closet with the lighted torch. He did nothing to determine the source of the gasoline odor. It could be inferred that the fire and resulting explosion were caused by the flame from the torch igniting the gasoline. From this evidence and reasonable inferences the jury could have found that Conklin and thus his employer were negligent.

"Liability for carelessly handling dangerous instrumentalities arises from failure to use due care, and such failure arises when the circumstances show that the actor had reason to know that his act was likely to produce injury to any person in the lawful pursuit of his own business and exercising reasonable care. [Citation.] When human life is at stake the rule of due care and diligence requires that without regard to difficulties or expense every precaution be taken reasonably to assure the safety and security of any person lawfully coming into the immediate proximity of the dangerous agency or device which is a peril to others. [Citations.] One who causes the use of a dangerous instrument in a negligent manner, or under such circumstances that he has reason to know it is likely to produce injury, is responsible for the natural and probable consequences of his act to any person not at fault. [Citation.] That which a man foresees is, as to him at least, natural and probable. [Citation.] No less a degree of care than that which is commensurate with the apparent danger is reasonable." (*Been* v. *Lummus Co.,* 76 Cal.App.2d 288, 292 [173 P.2d 34].)

It is not necessary that St. George's negligence or Conklin's negligence be the sole cause of Johnson's death and

Phillips' injuries; it is sufficient that either be one of the contributing causes. (*Westover* v. *City of Los Angeles*, 20 Cal. 2d 635, 639 [128 P.2d 350]; *Reid & Sibell* v. *Gilmore & Edwards Co.*, 134 Cal.App.2d 60, 65 [285 P.2d 364].)

▮ Whether a particular act or omission constitutes negligence is ordinarily a jury question; it is only when reasonable minds cannot differ with respect to whether proved facts and reasonable inferences therefrom spell negligence or nonnegligence that such issues may properly be taken from the jury. ▮ Where there is uncertainty as to the existence of negligence the question is not one of law but of fact to be settled by the jury; and this is so whether the uncertainty arises from a conflict in the evidence or because fair-minded men will honestly draw different conclusions from undisputed facts. (*Biondini* v. *Amship Corp.*, 81 Cal.App.2d 751, 766 [185 P.2d 94].)

▮ Defendants Collier and Conklin contend that Johnson was contributively negligent as a matter of law. Defendant St. George and his employers contend that both Johnson and Phillips were contributively negligent as a matter of law. As to the deceased Johnson, it is presumed he exercised due care and ordinary prudence (Code Civ. Proc., § 1963, subd. 4) unless it can be said the presumption was dispelled from the case. ▮ ''As expressed in *Scott* v. *Burke* (1952), 39 Cal.2d 388, 394 [247 P.2d 313], it is settled law that where alleged negligent acts and conduct of a decedent are at issue before the court and the 'testimony respecting such acts and conduct necessarily must be produced by witnesses other than the deceased, . . . an instruction that the deceased is presumed to have exercised ordinary care for his own concerns is . . . proper' except that if the fact proved by uncontradicted testimoney produced by the party seeking to invoke the presumption, 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption . . . the latter is dispelled and disappears from the case.' ▮ Although there is no room for the presumption where the driver or other person whose claimed negligence is at issue himself testifies to his actions at the time involved [citation], the rule is established that if such person be deceased or unable to testify by reason of loss of memory, the fact that other witnesses for the parties testified fully as to the acts and conduct of the allegedly negligent person does not deprive the party relying on the presumption of the benefit thereof unless the testimony

which he himself produces 'under circumstances which afford no indication that the testimony is the product of mistake or inadvertence . . . is wholly irreconcilable with the presumption sought to be invoked.' " (*Gigliotti* v. *Nunes*, 45 Cal.2d 85, 92 [286 P.2d 809]; *Leonard* v. *Watsonville Community Hospital*, 47 Cal.2d 509, 517 [305 P.2d 36].) ▆▆ Plaintiffs' evidence in the present case was not irreconcilable with the presumption.

▆▆ As to Phillips, contributory negligence is not established as a matter of law unless the only reasonable hypothesis is that such negligence exists, and before it can be held as a matter of law that contributory negligence exists the evidence must point unerringly to that conclusion. (*Slovick* v. *James I. Barnes Const. Co.*, 142 Cal.App.2d 618, 627 [298 P.2d 923].) ▆▆ It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury from the evidence, that the court can say, as a matter of law, that contributory negligence is established. ▆▆ Even where the facts are undisputed, if reasonable minds might draw different conclusions upon the question of negligence the question is one of fact for the jury. (*Bady* v. *Detwiler*, 127 Cal.App.2d 321, 339 [273 P.2d 941].)

It is argued that Phillips knew the danger of using gasoline. ▆▆ Knowledge that danger exists is not knowledge of the amount of danger necessary to charge a person with negligence. Doing an act with appreciation of the amount of danger, as well as of danger itself, is necessary to render a person negligent as a matter of law. (*Andre* v. *Allynn*, 84 Cal.App.2d 347, 352 [190 P.2d 949].) ▆▆ Where a person must work in a place of possible danger the amount of care he is bound to exercise for his own safety may well be less by reason of the necessity of his giving attention to his work than would otherwise be the case. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 239 [282 P.2d 69].) Cases in which it can be said that negligence of the plaintiff contributes proximately to the accident as a matter of law are rare. (*Anthony* v. *Hobbie*, 25 Cal.2d 814, 818 [155 P.2d 826].) Johnson and Phillips were entitled to assume, until a reasonable man in their place would be apprised of the contrary, that a safe place to work had been provided. (*Slovick* v. *James I. Barnes Const. Co.*, 142 Cal.App.2d 618, 628 [298 P.2d 923].) ▆▆ We cannot say, as a matter of law, that either Johnson or Phillips was contributively negligent.

▆▆ St. George and his employers also contend Johnson

and Phillips assumed the risk as a matter of law.    The two essential elements of the doctrine of assumption of risk are voluntary exposure to danger, and actual, not merely constructive, knowledge and appreciation of the risk assumed. (*Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 235 [282 P.2d 69] ; 35 Cal.Jur.2d 814, § 266.)    The jury could have found that the danger which caused the fire was the lighted blowtorch. It cannot be said as a matter of law that either Johnson or Phillips knew or should have known that Conklin was working in apartment 3 with a lighted blowtorch. Nor can it be said as a matter of law that by the use of gasoline on the floors of apartment 4 Johnson and Phillips assumed the risk of negligence on the part of Conklin.    It is not assuming a risk to assume that one is not exposed to danger which results only from a violation of duty by some other person. (*Leo* v. *Dunham,* 41 Cal.2d 712, 715 [264 P.2d 1].)

   As stated earlier, the court refused to permit Phillips to testify to what Johnson had told him St. George said in the conversation between St. George and Johnson the morning of the accident. Plaintiffs assert error. The point is made only as against St. George and his employers.    When a person's belief or state of mind is a fact in issue, word-utterances which betray the belief or state of mind of the speaker are admissible in evidence. Such evidence is not obnoxious to the hearsay rule. (2 Wigmore on Evidence, 3d ed., § 266; 6 Wigmore on Evidence, 3d ed., §§ 1789, 1790.)

*Smith* v. *Whittier*, 95 Cal. 279 [30 P. 529], was an action to recover damages for personal injuries caused by the falling of an elevator. At the trial a defendant was called as a witness on behalf of the plaintiff, and was asked whether he had received any direction from those who put the elevator in the building as to how it should be handled or used, and whether anything was said as to what the effect would be if he did not carry out those instructions. The questions were objected to and the objections overruled. On review it was contended the rulings were erroneous. Holding the rulings were correct, the court stated (p. 293) :

"If the fact sought to be established is, that certain words were spoken, without reference to the truth or falsity of the words, as, for instance, that a certain statement was made by a party to the action as an admission of a fact, or was made to him as a notice, or under such circumstances as to require action or reply from him, the testimony of any person

who heard the statement is original evidence, and not hearsay. (Wharton on Evidence, § 254; Greenleaf on Evidence, § 100; *People* v. *McCrea*, 32 Cal. 98; *People* v. *Estrado*, 49 Cal. 171.) Such evidence is admitted for the purpose of establishing merely the utterances of the words, and not their truth, but the admission in evidence of the words spoken is not to be used in determining the issue of their truth. Necessarily, the words so spoken are brought before the jury, but the jury can readily be instructed by the court that they are not to regard them as proof of the facts that are stated. (*People* v. *Estrado*, 49 Cal. 173.)'' (Also see *People* v. *One 1948 Chevrolet Conv. Coupe*, 45 Cal.2d 613, 620 [290 P.2d 538]; *Dunn* v. *Shamoon*, 37 Cal.App.2d 486, 491 [99 P.2d 1113]; *Head* v. *Wilson*, 36 Cal.App.2d 244, 251 [97 P.2d 509]; 31 C.J.S. 1009, § 257.) The evidence is likewise admissible when the converse of the factual situation which existed in *Smith* v. *Whittier*, *supra*, 95 Cal. 279, is present, as it is in the case at bar. (*Hobart* v. *Hobart Estate Co.*, 26 Cal.2d 412, 443-444 [159 P.2d 958]; *Werner* v. *State Bar*, 24 Cal.2d 611, 621 [150 P.2d 892]. *Cf. Hicks* v. *Ocean Shore Railroad, Inc.*, 18 Cal.2d 773, 782 [117 P.2d 850].) ▆▆▆ The evidence was admissible not for the purpose of proving the truth of what Johnson told Phillips but to show that Johnson believed he had been instructed to use gasoline to clean the floors.

▆▆▆ Phillips was asked by counsel for plaintiff if the idea of using gasoline to clean the floors originated with him. Counsel for defendant objected on the ground the question called for the conclusion of the witness. The objection was sustained. The ruling was clearly error. The question called for a fact, not a conclusion. It was a fact which Phillips knew of his own knowledge. (Code Civ. Proc., § 1845.) Phillips knew as a fact, not as a conclusion, whether the idea originated with him.

▆▆▆ Counsel for plaintiffs attempted, as against St. George and his employers, to read in evidence the following part of the deposition of Phillips: '' 'Q. [asked by defendants other than Conklin and Collier]. Had you been instructed by any one of your superiors to charge it [the gasoline] to the general contractor? A. After Johnson's first conversation with St. George about cleaning the house, when he came back he told me St. George had told him to use gasoline on it, he would furnish the gas and we would do the work. Other than being told that, I don't know.' '' Objections by counsel for defendants on the grounds of hearsay and nonresponsiveness were

sustained. Error is asserted. The court did not err. At the time the deposition was taken all objections except as to the form of questions were reserved to the time of trial. The answer obviously was not responsive to the question.

The question of negligence, contributory negligence, and assumption of risk were for the jury. The court erred in granting the motions for judgments of nonsuit.

The judgments appealed from are reversed.

Shinn, P. J., and Wood (Parker), J., concurred.

Respondents' petitions for a hearing by the Supreme Court were denied June 11, 1958. McComb, J., was of the opinion that the petitions should be granted.