[Civ. No. 24325.   Second Dist., Div. One.   Dec. 29, 1960.]

ANTONIO DiBERNARDO et al., Appellants, v. STAR-KIST FOODS, INC. (a Corporation), Respondent.

Karmelich & Felando and August Felando for Appellants.

Ball, Hunt & Hart and Clark Heggeness for Respondent.

WOOD, P. J.—Plaintiffs were the owners of a fishing boat known as the Santa Maria. On December 12, 1955, while the boat was at the dock of defendant's cannery at the Los Angeles Harbor and while sardines were being removed from the boat by mechanical equipment, a seaman, Mr. Morelli, who was on the boat and was an employee of plaintiffs, was injured. Plaintiffs, having paid certain amounts for his wages, medical expenses, and general damages, commenced this action to recover, as indemnity, the amounts so paid by them. In a nonjury trial, judgment was for defendant. Plaintiffs appeal from the judgment.

In the first cause of action of the second amended complaint the plaintiffs sought reimbursement of $2,752.57 paid by them for wages, "maintenance and cure" in connection with the injury to Morelli. In the second and third causes of action plaintiffs sought recovery of $5,663.43 which they paid to Morelli in settlement of his claim for general damages in the amount of $15,000. In each cause of action it was alleged that the "sole, or active or primary, and proximate cause of the injuries sustained" by Morelli was the "negligent and reckless action of the defendant's agent, Matt Bebich, as aforesaid, whereby plaintiffs have been damaged. . . ." (The acts constituting the alleged negligent action will be referred to hereinafter.)

The parties submitted to the trial court a written stipulation which was titled "Stipulation of Testimony in Lieu of Formal Trial." The matter was submitted for decision upon the stipulation and briefs. The stipulation was as follows:

"In addition to the stipulations contained in the pre-trial conference order and in the deposition of FERDINANDO DIBER-

NARDO, it is agreed that the plaintiffs' witnesses would testify as follows:

"1. Whenever plaintiffs delivered sardines to the defendant's cannery at Terminal Island, defendant provided plaintiffs with a rubber hose approximately twenty-five feet in length and 18 to 24 inches in diameter. It had a steel collar in the center and was attached to an electrical suction pump on defendant's unloading dock. When empty, it weighed more than five hundred pounds. The hose, suspended from a boom, was raised and lowered by means of an electric push-button control switch attached to a movable cable. The purpose of the hose and pump was to suck sardines from the fish hatch of a fishing vessel to a conveyor on the defendant's unloading dock. The attached photographs illustrate the equipment referred to in this stipulation.

"2. On December 12, 1955, the 'Santa Maria' came alongside defendant's dock to unload sardines. Defendant's employee MATT BEBICH used the control switch to lower the suction hose to the fish hatch of the vessel. BEBICH then handed the control switch to DIBERNARDO, who was standing on the deck of the vessel. DIBERNARDO had operated this control switch many times before. BEBICH then remained on the unloading dock and attended a water hydrant, a separate piece of equipment located on the unloading dock to which a hose was attached. Using this hose, members of the crew of the 'Santa Maria' would spray water on the sardines in the fish hatch so that the fish would float and be able to enter the suction hose. When requested by members of the crew of the vessel, BEBICH would increase or decrease the pressure of water flowing from the water hydrant. During the time the fish unloading operation was under way, DIBERNARDO operated the control switch and from time to time raised and lowered the suction hose in the fish hatch.

"While standing under the suction hose, DIBERNARDO intended to raise the suction hose by pushing the 'raise' button on the control switch, but inadvertently pushed the 'lower' button. At this time, the hose was filled with water and sardines moving through the hose to the conveyor belt on the dock. Neither the control switch nor any other equipment was defective.

"When DIBERNARDO pushed the wrong button, the hose dropped down on him and knocked him to the deck of the vessel. He was knocked unconscious and let go of the electric control switch.

"Upon seeing DiBernardo on the deck under the hose, Biagio Morelli, together with two other members of the crew, went to DiBernardo's rescue. They attempted to lift the suction hose off of DiBernardo. Morelli placed his hand into a ring approximately five inches in diameter which was attached to the suction hose resting on DiBernardo. In this ring was a hook which was attached to a cable leading to the boom. While the crew members of the 'Santa Maria' were attempting to lift the suction hose from DiBernardo and while Morelli had his hand in the ring, Bebich also came to DiBernardo's rescue. He jumped from the dock to the vessel and picked up the electric switch control and, without warning, pressed the 'raise' button in order to cause the hose to be lifted off DiBernardo. This caused the cable attached to the hook in the ring to become taut and the hook to become taut against the ring, thereby catching Morelli's finger and amputating it. Five to fifteen seconds elapsed from the time DiBernardo pressed the wrong button until Morelli's finger was caught in the ring.

"3. Prior to December 12, 1955, Biagio Morelli had been steadily employed as a fisherman aboard said vessel, having been orally employed by plaintiffs for the period from September 1, 1955 to August 31, 1956. As a result of his injury, he was unable to work from the date of injury until May 16, 1956.

"4. The cost of the medical treatment of Morelli was $199.50 and Morelli was paid $750.00 maintenance payments. As a result of his injuries, Morelli lost earnings in the sum of $1,798.07.

"5. On October 29, 1956, in consideration of $7,500.00 paid to him, Morelli executed a general release in favor of the owners and operators of the Oil Screw 'Santa Maria,' their heirs, executors, administrators and assigns, and all persons interested therein, and the Oil Screw 'Santa Maria.' Morelli's medical expenses were paid, together with $750.00 maintenance payments. All sums were paid by Steamship Mutual, plaintiffs' liability insurance carrier, except the sum of $500.00 paid by plaintiffs under the deductible feature of their standard form insurance policy.

"6. The vessel 'Santa Maria' is a member of the Fisherman's Cooperative Association. There are no provisions in the agreement between the Fisherman's Cooperative Association and the defendant pertaining to unloading operations. Each party retains the right to offer the agreement in evidence.

"7. BEBICH died after the accident of natural causes."

At the beginning of the stipulation, as above shown, the stipulation refers to stipulations "in the deposition of Ferdinando DiBernardo [one of the plaintiffs]." A stipulation so referred to was as follows: "Mr. Karmelich [counsel for plaintiffs]. Counsel, I will stipulate with you that this vessel at no time, on its own, had any agreement with Star-Kist, but that if any agreement was entered into between Star-Kist Foods and the Fishermen's Co-operative Association, which these owners, as owners of the SANTA MARIA, were a member, I will further stipulate that there was no expressed or written indemnity agreement."

The findings with respect to the acts of defendant, in connection with the happening of the accident, were in substance the same as the statements in the stipulation with respect to the acts of the defendant. The court also found: that "Neither defendant nor its employees were negligent in so acting or in so going to DiBernardo's rescue"; that the accident "was not caused by any negligence or defective equipment on the part of defendant," and the sole cause of the accident, the injuries to Morelli, and any damages suffered to plaintiffs, was the negligence of plaintiff [Ferdinando] DiBernardo; that the defendant did not agree "to indemnify or hold plaintiffs harmless from any damages sustained by plaintiffs during unloading operations"; that the vessel "Santa Maria" is a member of the Fishermen's Cooperative Association, and said association and defendant entered into an agreement covering the purchase of fish by defendant from the association; that defendant did not breach said agreement.

Appellants contend that the court erred in finding that "Neither defendant nor its employees were negligent in so acting or in going to DiBernardo's rescue." The expression "in so acting" refers to the acts of defendant's employee Bebich who jumped from the unloading dock onto the boat and pressed the "raise button." Appellants argue that the evidence was insufficient to support a finding that defendant's employee Bebich was not negligent. They also argue, as follows: (1) that Bebich, defendant's employee who was on the dock and was regulating the flow of water from the hydrant, knew that appellant's employees (crew members on the boat) were using their physical strength or power in trying to rescue DiBernardo by lifting the heavy hose; (2) that Bebich should have warned appellant's employees (crew members) of his intention to supplement their rescue efforts with mechanical

power by pressing the "raise button"; that the failure of Bebich to give such warning was negligence which caused the injury to crew member Morelli; that the conduct of Bebich was negligence as a matter of law; that Bebich was in exclusive control of the "press" buttons (after he jumped onto the boat) and that the doctrine of res ipsa loquitur is applicable herein, and the defendant did not produce evidence sufficient to offset the inference of negligence arising from the application of such doctrine.

Appellants also contend that the court erred in finding that Ferdinando DiBernardo "negligently and carelessly pushed the wrong button so as to cause the hose to drop down upon him, knocking him unconscious," and that "the sole cause of said accident" was the negligence of plaintiff Ferdinando DiBernardo. With respect to this contention, appellants argue that plaintiff DiBernardo was under no legal duty of protecting himself from harm; that the evidence shows that DiBernardo voluntarily placed himself under the hose, and there was no evidence that plaintiffs, as owners of the boat, had created the danger to DiBernardo by their negligence; and that plaintiffs cannot be liable for injuries to Morelli unless the negligence of Bebich is imputed to plaintiff. Appellants also argue that the evidence does not place this case within the class of cases known as rescue cases; that in such class of cases where the rescued person has been held liable for injuries to the rescuer, there was obvious danger and risk to the rescuer who had left a place of safety and incurred danger of injury in rendering assistance; that in the present case Morelli, the injured employee of plaintiffs, did not subject himself to any undue risk in going to the assistance of the plaintiff DiBernardo who was lying under the motionless hose; that it was the conduct of DiBernardo which initiated the effort of Morelli in assisting in the rescue.

The question as to whether plaintiff Ferdinando DiBernardo was negligent was a question of fact for the determination of the trial court. While the sardines were being unloaded, and while plaintiff DiBernardo was standing under the heavy hose, he pressed the wrong button (on the hose control box) and thereby caused the hose to drop upon him, knock him down, and render him unconscious. The pressing of the button started a series of events which resulted in the injury to Morelli. Whether the act of DiBernardo in pressing the button was negligence, or was conduct which could be excused by momentary forgetfulness, was a question of fact

for the trial court to determine. (See *Austin* v. *Riverside Portland Cement Co.*, 44 Cal.2d 225, 237 [282 P.2d 69].) The trial court found that he was negligent, and that finding is supported by the evidence.

The question as to whether defendant's employee Bebich was negligent was a question of fact for the trial court. Whether the act of Bebich was a superseding cause or the inevitable result of negligent conduct of DiBernardo was a question of fact for the trial court. (See *Been* v. *Lummus*, 76 Cal.App.2d 288, 292 [173 P.2d 34]; *Sloboden* v. *Time Oil Co.*, 131 Cal.App.2d 557 [281 P.2d 85].) At the time DiBernardo caused the hose to drop upon himself, Bebich was on the dock regulating the flow of water from the hydrant into the fish hatch (on the boat) so that the flow would be according to the requests of the members of the boat crew, Bebich was not involved in any way in causing the hose to drop upon DiBernardo. When the hose dropped upon DiBernardo, three members of the boat crew, including Morelli (the one who was injured thereafter) proceeded immediately to try, by their own strength, to lift the hose. Bebich jumped from the dock onto the boat and pressed the "raise button" and thereby caused the heavy hose to be raised, by mechanical power, from the body of DiBernardo. When Bebich pressed the button, the hook, which was at the end of the lifting cable, was lying in a lifting ring which was on the top side of the hose. When the button was pressed, the cable became taut and the hook became taut against the upper inside part of the ring, and the hose was thereby lifted from DiBernardo's body. When the button was pressed, Morelli's hand was in the ring, and when the hook became taut against the ring, one of Morelli's fingers was caught between the hook and the ring and was amputated. Five to fifteen seconds elapsed from the time DiBernardo pressed the wrong button until Morelli was injured. It thus appears that the whole series of events occurred within a very short period of time, and that Bebich was acting in an emergency which called for quick action in order to rescue DiBernardo. Bebich had no time for deliberation. He was required to exercise only the degree of care which an ordinarily prudent person would exercise under the emergency circumstances then prevailing. Whether he exercised reasonable care under such circumstances, when he saw DiBernardo in imminent peril, was a question of fact for the determination of the trial court. (See *Leo* v. *Dunham*, 41 Cal.2d 712, 715 [264 P.2d 1].) As

above stated, the trial court found that Bebich was not negligent. That finding is supported by the evidence.

In view of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.